# MISSOURI PACIFIC RAILWAY COMPANY *v.* NEBRASKA.

ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

No. 1. Argued March 4, 1896.—Decided November 30, 1896.

The taking by a State of the private property of one person or corporation, without the owner's consent, for the private use of another, is not due process of law, and is a violation of the Fourteenth Article of Amendment of the Constitution of the United States.

A statute of a State, by which, as construed by the Supreme Court of the State, a board of transportation is authorized to require a railroad corporation, which has permitted the erection of two elevators by private persons on its right of way at a station, to grant upon like terms and conditions a location upon that right of way to other private persons in the neighborhood, for the purpose of erecting thereon a third elevator, in which to store their grain from time to time, is a taking of private property of the railroad corporation for a private use, in violation of the Fourteenth Article of Amendment of the Constitution of the United States.

THIS was a writ of error to review a judgment of the Supreme Court of the State of Nebraska, awarding a writ of mandamus to compel the Missouri Pacific Railway Company, a corporation of Nebraska, to comply with an order of the Nebraska State Board of Transportation, which directed the company to grant to John W. Hollenbeck and others the right and privilege of erecting an elevator upon the grounds of the railway company at its station at Elmwood.

By the constitution of Nebraska of 1875, art. 11, sec. 4, "Railways heretofore constructed or that may hereafter be

constructed in this State are hereby declared public highways, and shall be free to all persons for the transportation of their persons and property thereon, under such regulations as may be prescribed by law. And the legislature may from time to time pass laws establishing reasonable maximum rates of charges for the transportation of passengers and freight on the different railroads in this State." And by sec. 7, " The legislature shall pass laws to correct abuses and prevent unjust discrimination and extortion in all charges of express, telegraph and railroad companies in this State, and enforce such laws by adequate penalties, to the extent, if necessary for that purpose, of forfeiture of their property and franchises."

The State Board of Transportation was created by the statute of Nebraska of March 31, 1887, c. 60, entitled " An act to regulate railroads, prevent unjust discrimination," etc., which took effect July 1, 1887, and was very similar to the act of Congress of February 4, 1887, c. 104, regulating interstate commerce (24 Stat. 379), except in applying only to commerce within the State. The material provisions of the Nebraska statute are copied in the margin.[1]

---

[1] SEC. 1. The provisions of this act shall apply to any common carrier or carriers engaged in the transportation of passengers or property by railroad, under a common control, management or arrangement for a continuous carriage or shipment from any point in the State of Nebraska to any other point in said State. The term " railroad," as used in this act, shall include the road in use by any corporation operating a railroad, whether owned or operated under a contract, agreement or lease; and the term " transportation " shall include all instrumentalities of shipment or carriage. All charges made for any service rendered or to be rendered in the transportation of passengers or property as aforesaid, or in connection therewith, or for the receiving, delivery, storage or handling of such property, shall be reasonable and just; and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful.

SEC. 2. If any common carrier subject to the provisions of this act shall directly or indirectly, by any special rate, rebate, drawback or other device, charge, demand, collect or receive from any person or persons a greater compensation for any service rendered or to be rendered in the transportation of passengers or property, subject to the provisions of this act, than it charges, demands, collects or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and

On October 9, 1889, there was presented to the Nebraska State Board of Transportation a complaint in these terms:

"The petition and complaint of John W. Hollenbeck, Cyrelius Lemasters, John W. Miller, John Hayes, Charles Hall and others, trading under the name of the Elmwood Farmers' Alliance Number 365, of Elmwood, Cass County, Nebraska, respectfully represents:

---

conditions, such common carriers shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful.

SEC. 3. It shall be unlawful for any common carrier subject to the provisions of this act to make or give any preference or advantage to any particular person, company, firm, corporation or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation or locality, or any particular description of traffic, to any prejudice or disadvantage in any respect whatsoever. Every common carrier subject to the provisions of this act shall, according to their respective powers, afford all reasonable, proper and equal facilities for the interchange of traffic between their respective lines, and for the receiving, forwarding and delivering of passengers and property to and from their several lines and those connecting therewith, and shall not discriminate in their rates and charges between such contracting lines; but this shall not be construed as requiring any such common carrier to give the use of its track or terminal facilities to another carrier engaged in like business.

SEC. 17. Said board shall have the general supervision of all railroads operated by steam in the State, and shall inquire into any neglect of duty, or violation of any of the laws of this State, by railroad corporations doing business in this State, or by any officer, agent or employé of any railroad corporation doing business in this State ; and shall from time to time carefully examine and inspect the condition of each railroad in this State, and its equipments and manner of the conduct and management of the same, with reference to the public safety, interest and conveniences. It shall carefully investigate any complaint made in writing, and under oath, concerning any lack of facilities or accommodations furnished by any railroad corporation doing business in this State, for the comfort, convenience and accommodation of individuals and the public; or any unjust discrimination against either any person, firm or corporation, or locality, either in rates, facilities furnished, or otherwise; and whenever, in the judgment of said board, any repairs are necessary upon any portion of the road, or upon any stations, depots, station-houses or warehouses, or upon any of the rolling stock of any railroad doing business in this State, or additions to, or any changes in its rolling stock, stations, depots, station-houses or warehouses are necessary in order to secure the safety, comfort, accommodation and convenience of the public and individuals, or any change in the mode of conducting its business or operating its road is reasonable and expedient

" First. That the petitioners and complainants are now and have for many years been extensive raisers of corn, wheat, oats and other cereals, and that large quantities of said cereals

in order to promote the security and accommodation of the public, or in order to prevent unjust discriminations against either persons or places, it shall make a finding of the facts, and an order requiring said railroad corporation to make such repairs, improvements or additions to its rolling stock, road, stations, depots or warehouses, or to make such changes, either in the manner of conducting its business or in the manner of operating its road, as such board shall deem proper, reasonable and expedient; and said finding shall be entered in a record kept for that purpose, and said board shall cause a copy of the same to be served on said railroad corporation by any sheriff or constable in this State, in the same manner as a summons is required to be served, and shall also transmit to the person, firm or corporation interested, a copy of the same. Said railroad corporation shall, within ten days after being served with a copy of said finding and order, show cause, if any it has, why it should not comply with said order, by filing with said board an answer, verified in the same manner as pleadings of fact in the district court are required to be verified. If no answer shall be filed as aforesaid, then such finding and order shall be final and conclusive as against said railroad corporation. Upon the filing of any answer as provided for in this section, the said board shall set a day, not exceeding thirty days from the date of the filing of such answer, for the hearing of the matter, and shall notify said railroad company, or any other person or persons or corporations interested, of the time so fixed, and the place of hearing the same; and shall carefully and fully investigate the matter, and for that purpose may subpœna witnesses, and compel their attendance, and the productions of any books or papers, in the same manner as the courts of law of this State may do. After a full investigation of the matter, said board shall again make a finding of the facts, and make such an order as it may deem just in the premises. If said railroad shall refuse or neglect to comply with such order, the board shall order the attorney general, or the county attorney of the proper county, to institute a suit to compel such railroad company to comply with such order; and it shall be the duty of the attorney general, or the county attorney of the proper county, at the request of the board, or any person interested in any such order or finding, to apply to the Supreme Court, or to the district court of any county through or into which its line of road may run, in the name of the State and on the relation of said board, for a writ of mandamus to compel such railroad company to comply with such order; and upon the hearing of any such cause such finding and order shall be, as against such railroad company, *prima facie* evidence of the reasonableness of such order, and of the necessity of such repairs, changes, additions or improvements, or other matters in such order required to be done or omitted. Nebraska Laws of 1887, pp. 541, 542, 555, 558; Compiled Statutes of 1895, pp. 779, 780, 785, 786.

have been marketed in seasons past, and that large quantities are now ready for the markets; that the several farms and leaseholds of the petitioners are situated near Elmwood, in Cass County, Nebraska.

"Second. That the Missouri Pacific Railway Company is a common carrier, engaged in the transportation of passengers and property by railroad under a common control, management or arrangement for a continuous carriage or shipment through Elmwood aforesaid.

"Third. That the said defendant railroad company is the owner of the right of way and depot grounds bordering the main and side tracks of the defendant company, upon which are located the station-houses and other shipping facilities connected with the transportation originating at or destined to Elmwood station aforesaid; that the complainants aforesaid did make a written application to the general manager of the defendant company for a location, on the right of way at Elmwood station aforesaid, for the erection of an elevator of sufficient capacity to store from time to time the cereal products of the farm and leaseholds of complainants aforesaid, as well as the products of other neighboring farms; that the application aforesaid was refused by the general manager of the defendant company aforesaid.

"Fourth. That the elevators now located on the right of way of the defendants aforesaid at Elmwood station aforesaid are during certain seasons of the year wholly insufficient in affording a market for the cereals of the complainants and others desirous of marketing their grain.

"Fifth. That the refusal of the defendant railroad company to lease a location for an elevator as aforesaid is in contravention of the provisions of an act of the legislature entitled 'An act to regulate railroads, prevent unjust discrimination,' etc., approved March 31, 1887, in that —

"(*a.*) The said refusal is an unjust discrimination.

"(*b.*) The said Missouri Pacific Railway Company, by the refusal aforesaid, is subjecting the complainants aforesaid to an undue and unreasonable prejudice and disadvantage, in respect to traffic facilities, over other localities.

"(c.) The said Missouri Pacific Railway Company, by the refusal aforesaid, is giving an undue and unreasonable preference and advantage to Adams and Gilbert,.and Eells Brothers, owners of the elevators located at Elmwood, on the right of way of the defendant, by permission of the said Missouri Pacific Railway Company.

"Wherefore the petitioners pray that the defendants may be required to answer the charges herein, and that after due hearing and investigation an order be made, commanding the defendants to cease and desist from said violations of the act of the legislature entitled 'An act to regulate railroads,' etc., and for such other and further relief as the board of trars- portation may deem necessary in the premises."

On the same day, the board of transportation issued an order to the railway company to show cause why the prayer of the complaint should not be granted; and on October 19, 1889, the railway company filed an answer, admitting its ownership of the right of way and depot grounds at Elm- wood, described in the complaint, and its refusal to allow the petitioners to erect an elevator on the side track there, and that there were two elevators now upon that track; and alleg- ing that those two elevators were sufficient to transact the business at Elmwood, and that there was no room there for another elevator, .without purchasing an additional right of way and extending its track, and that this was the only reason for the refusal; and denying all the other allegations of the complaint.

On December 13, 1889, the board of transportation, after a hearing, at which evidence and arguments were submitted on behalf of both parties, made the following findings and order :

"This case and complaint having been heard by the board upon the pleadings, evidence and argument of counsel, the board finds as follows:

"First. That the defendant has all its side tracks within the limits of .its right of way and depot grounds at the said station of Elmwood.

"Second. That there are only two elevators at said station

of Elmwood, having the combined capacity of ten thousand bushels, and that said elevators are insufficient to handle the grain shipped at said station, and that the owners and operators thereof have entered into a combination, and do combine and fix the prices of grain, and prevent competition in the purchase price thereof, and that there are not sufficient facilities for the handling and shipping of grain at said station.

"Third. That it is necessary for the convenience of the public, patrons and shippers of grain of said railroad company, that another elevator be erected and operated at said station.

"Fourth. That the defendant has permitted two elevators to be erected upon its grounds at said station, and that the same are now being operated, and that the said defendant has refused to grant the same privilege to the complainant.

"Fifth. That an elevator is necessary for the shipment of grain by railroad, and that, by reason of the side track being placed within the right of way and depot grounds, the plaintiff cannot ship grain without building its elevator upon the grounds of the defendant.

"Sixth. That there is room upon the grounds of the defendant at said station for another elevator without materially interfering with the operation of said railroad, and the building of the elevator by the plaintiffs upon said ground will not materially affect the defendant in the use of its grounds, or be an unreasonable burden to the defendant.

"Seventh. That granting of the right and privilege by the defendant to the elevators now standing upon its right of way and depot grounds at said station, and refusing to grant the same right and privilege to the complainant, is an unjust and unreasonable discrimination against the complainant, under the circumstances of this case.

"Eighth. That the said respondent has discriminated against the complainant, and that it has unlawfully made and given a preference and advantage to Adams and Gilbert, and to Eells Brothers, owners and operators of elevators at said station.

"It is therefore, by the Board of Transportation of the State of Nebraska, considered, adjudged and ordered that the respondent, the Missouri Pacific Railway Company, shall

cease and discontinue discriminating against the complainant, and grant to said complainant the same facilities and privileges as granted to the owners and operators of the elevators now established at said station; and that said respondent, within ten days after the service of this order, grant and give to the complainant, on like terms and conditions as granted to the said Adams and Gilbert, and Eells Brothers, the right and privilege of erecting an elevator upon its ground at said station, adjacent to said respondent's side track, at a convenient and suitable place thereon, to wit, at a point on the side track of said respondent near the east terminus of said side track, or some other suitable and convenient place on said side track, if the parties to this action can agree; and that said respondent grant to the said complainant all and equal facilities for the handling and shipping of grain at said station which it grants and gives to other shippers of grain at said station, and cease from all discrimination or preferences to and of said shippers and operators of elevators at said station of Elmwood aforesaid."

The railway company not having complied with that order, there was presented to the Supreme Court of the State of Nebraska, on January 7, 1890, a petition in the name of the State of Nebraska, at the relation of the board of transportation, and signed by the attorney general of the State, setting forth the proceedings and order of the board of transportation, and praying for a writ of mandamus to the railway company to compel them to comply with that order.

To this petition for a mandamus the railway company filed an answer, setting up the same defences as before the board of transportation, and relying upon the provisions of the Fourteenth Amendment of the Constitution of the United States, which prohibit any State to deprive any person of property without due process of law, or to deny to any person, within its jurisdiction, the equal protection of the laws.

Upon a hearing on this petition and answer, the Supreme Court of Nebraska, on May 13, 1890, " found the issues in favor of the relators," and adjudged that, unless the railway company within forty days complied with the order of the

board of transportation, a writ of mandamus should issue to compel a compliance with that order according to its terms. 29 Nebraska, 550. The railway company sued out this writ of error.

*Mr. John F. Dillon* for plaintiff in error. *Mr. Winslow S. Pierce* and *Mr. Harry Hubbard* were on his brief.

*Mr. A. S. Churchill* for defendant in error. *Mr. George H. Hastings* and *Mr. W. A. Dilworth* filed a brief for same.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

The arguments in this case have taken a wider range than is required for its decision. The material facts, as assumed by the court below, are as follows:

The Missouri Pacific Railway Company, a corporation of the State of Nebraska, was the owner of the right of way and depot grounds, within which were its main and side tracks, its station-houses, and other shipping facilities, at Elmwood in that State; and had permitted two elevators to be erected and operated by private firms on the side track at that station.

John W. Hollenbeck and others, apparently not a corporation, but a voluntary association of persons owning farms and leaseholds in the neighborhood of Elmwood, upon which they raised corn, wheat, oats and other cereals, large quantities of which were ready for market, made an application in writing to the railway company to grant them "a location on the right of way at Elmwood station aforesaid, for the erection of an elevator of sufficient capacity to store from time to time the cereal products of the farms and leaseholds of" the applicants, "as well as the products of other neighboring farms." That application was refused by the railway company.

The applicants then made a complaint to the Board of Transportation of the State of Nebraska, alleging that the two elevators already built on the right of way of the rail-

way company at Elmwood station were " during certain seasons of the year wholly insufficient in affording a market for the cereals of the complainants and others desirous of marketing their grain " ; and that the refusal of the railway company to grant to the complainants a location for an elevator was in violation of the Nebraska statute of 1887, c. 60, in that such refusal was an unjust discrimination, and that the railway company, by such refusal, was subjecting the complainants to an undue and unreasonable prejudice and disadvantage, in respect to traffic facilities, over other localities, and was giving an undue and unreasonable preference and advantage to the owners and operators of the two elevators already built at that station.

The board of transportation, after notice to the railway company, and hearing evidence and arguments, found that the two existing elevators were insufficient to handle the grain shipped at Elmwood station, and the owners and operators of those elevators had entered into a combination to fix the prices of grain and to prevent competition in the price thereof, and there were not sufficient facilities for the handling and shipping of grain at that station; that it was necessary for the convenience of the public that another elevator should be erected and operated there; that, by reason of the side track being placed within the right of way and depot grounds, the complainants could not ship grain without building their elevator upon the grounds of the railway company; that there was room upon those grounds for another elevator without materially interfering with the operation of the railroad, and the building of an elevator thereon by the complainants would not materially affect the railway company in the use of its grounds, or be an unreasonable burden to it; and that the granting by the railway company of the right and privilege to the owners of the two elevators now standing, and refusing to grant the like right and privilege to the complainants, was an unjust and unreasonable discrimination against the complainants, and unlawfully gave a preference and advantage to the owners of the two existing elevators.

The board of transportation thereupon ordered that the railway company, within ten days, grant to the complainants, on like terms and conditions as granted to the owners of the two existing elevators, the right and privilege of erecting an elevator upon its grounds, and adjacent to its track, at a point specified in the order, or at some other suitable and convenient place if the parties could agree; and grant to the complainants all and equal facilities for the handling and shipping of grain at that station, which it granted to other shippers of grain there, and cease from all discrimination or preference to and of shippers and operators of elevators at that station.

The railway company not having complied with the order, the Supreme Court of the State, upon a petition in the name of the State, at the relation of the board of transportation, for a mandamus, and an answer thereto and hearing thereon, found the issues in favor of the relators, and adjudged that, unless the railway company, within forty days, complied with order of the board of transportation, a writ of mandamus should issue to compel compliance with that order according to its terms. In the opinion of the court, it was said: "The correctness of the findings of the board is not seriously questioned, but its power to make such findings and order is denied." 29 Nebraska, 556.

The statute of Nebraska of 1887, c. 60, §§ 1–3, prohibits, and declares to be unlawful, all unjust and unreasonable charges made by a railroad company for any services rendered in the transportation (which includes all instrumentalities of shipment or carriage) of passengers or property, or in connection therewith, or for the receiving, delivering, storage or handling of such property; the demanding or collecting, directly or indirectly, by a railroad company, from any person, of a greater compensation for such service, than it demands or collects from any other person for a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, is declared to be unjust discrimination; it is also made unlawful to give any preference or advantage to, or to subject to any prejudice or disadvantage, any particular person, company, firm, corporation or locality, or

any particular description of traffic, in any respect whatsoever; and railroad companies are required, according to their respective powers, to afford all reasonable, proper and equal facilities for the interchange of traffic between their respective lines, and for the receiving, forwarding and delivering of passengers and property to and from their several lines and those connecting therewith, and not to discriminate in their rates and charges between such contracting lines.

By § 17, upon complaint in writing, concerning any lack of facilities or accommodations furnished by a railroad company, for the comfort, convenience and accommodation of individuals and the public, or concerning any unjust discrimination against any person, firm, corporation or locality, either in rates, facilities furnished, or otherwise, the board of transportation, whenever, in its judgment, any repairs of, or additions to, or changes in, any portion of the road, rolling stock, stations, depots, station-houses or warehouses of a railroad company, are necessary in order to secure the safety, comfort, accommodation and convenience of the public and individuals, or any change in the mode of conducting its business is reasonable and expedient in order to promote the security and accommodation of the public, or to prevent unjust discrimination against persons or places, is directed to order the railroad company to make such repairs, additions or changes.

The Supreme Court of Nebraska has construed this statute as authorizing the board of transportation to make the order questioned in this case, which required the railroad company to grant to the relators the right to erect an elevator upon its right of way at Elmwood station, on the same terms and conditions on which it had already granted to other persons rights to erect two elevators thereon. The construction so given to the statute by the highest court of the State must be accepted by this court in judging whether the statute conforms to the Constitution of the United States. *Chicago, Milwaukee & St. Paul Railway* v. *Minnesota*, 134 U. S. 418, 456 ; *Illinois Central Railroad* v. *Illinois*, 163 U. S. 142, 152.

A railroad corporation doubtless holds its station grounds, tracks and right of way as its private property, but for the

public use for which it was incorporated; and may, in its discretion, permit them to be occupied by other parties with structures convenient for the receipt and delivery of freight upon its railroad, so long as a free and safe passage is left for the carriage of freight and passengers. *Grand Trunk Railroad* v. *Richardson*, 91 U. S. 454. But how far the railroad company can be compelled to do so, against its will, is a wholly different question.

Upon the admitted facts of the case at bar, the railroad company had granted to two private firms the privilege of erecting elevators upon its right of way at Elmwood station; and had refused an application of other private persons, farmers in the neighborhood, for the privilege of erecting on that right of way a third elevator of sufficient capacity to store from time to time the grain produced upon their farms and upon those of their neighbors; and has been ordered by the board of transportation, and by the Supreme Court of the State, to grant to the applicants a location upon its right of way for the purpose of erecting thereon such an elevator, upon the like terms and conditions as in its grants to the owners of the two existing elevators.

The only particular alleged in the complaint, and the only one, therefore, presented for our consideration in this case, in which the railroad company is supposed to have made an unjust discrimination against the complainants, or to have subjected them to an undue and unreasonable prejudice and disadvantage, in respect to traffic facilities, over other locations, or to have given an undue and unreasonable preference to other persons, is the refusal of the railroad company to grant to the complainants a location upon its right of way for the purpose of erecting an elevator thereon, upon the terms and conditions upon which it had previously granted to other persons similar privileges to erect two other elevators.

The record does not show what were the terms and conditions of the contracts between the railroad company and the owners of those elevators; nor present any question as to the validity of those contracts.

Nor does it present any question as to the power of the

legislature to compel the railroad company itself to erect and maintain an elevator for the use of the public; or to compel it to permit to all persons equal facilities of access from their own lands to its tracks, and of the use, from time to time, of those tracks, for the purpose of shipping or receiving grain or other freight, as in *Rhodes* v. *Northern Pacific Railroad*, 34 Minnesota, 87, in *Chicago & Northwestern Railway* v. *People*, 56 Illinois, 365, and in *Hoyt* v. *Chicago, Burlington & Quincy Railroad*, 93 Illinois, 601.

Nor does this case show any such exercise of the legislative power to regulate the conduct of the business, or the rate of tolls, fees or charges, either of railroad corporations or of the proprietors of elevators, as has been upheld by this court in previous cases. *Munn* v. *Illinois*, 94 U. S. 113; *Chicago, Burlington & Quincy Railroad* v. *Illinois*, 94 U. S. 155; *Dow* v. *Beidelman*, 125 U. S. 680; *Budd* v. *New York*, 143 U. S. 517; *Brass* v. *Stoeser*, 153 U. S. 391; *Covington & Cincinnati Bridge Co.* v. *Kentucky*, 154 U. S. 204, 213, 214; *Louisville & Nashville Railroad* v. *Kentucky*, 161 U. S. 677, 696.

The order in question was not limited to temporary use of tracks, nor to the conduct of the business of the railway company. But it required the railway company to grant to the petitioners the right to build and maintain a permanent structure upon its right of way.

The order in question was not, and was not claimed to be, either in the opinion of the court below, or in the argument for the defendant in error in this court, a taking of private property for a public use under the right of eminent domain. The petitioners were merely private individuals, voluntarily associated together for their own benefit. They do not appear to have been incorporated by the State for any public purpose whatever; or to have themselves intended to establish an elevator for the use of the public. On the contrary, their own application to the railroad company, as recited in their complaint to the board of transportation, was only "for a location, on the right of way at Elmwood station aforesaid, for the erection of an elevator of sufficient capacity to store

from time to time the cereal products of the farms and lease-holds of complainants aforesaid, as well as the products of other neighboring farms."

To require the railroad company to grant to the petitioners a location on its right of way, for the erection of an elevator for the specified purpose of storing from time to time the grain of the petitioners and of neighboring farmers, is to compel the railroad company, against its will, to transfer an estate in part of the land which it owns and holds, under its charter, as its private property and for a public use, to an association of private individuals, for the purpose of erecting and maintaining a building thereon for storing grain for their own benefit, without reserving any control of the use of such land, or of the building to be erected thereon, to the railroad company for the accommodation of its own business, or for the convenience of the public.

This court, confining itself to what is necessary for the decision of the case before it, is unanimously of opinion, that the order in question, so far as it required the railroad corporation to surrender a part of its land to the petitioners, for the purpose of building and maintaining their elevator upon it, was, in essence and effect, a taking of private property of the railroad corporation, for the private use of the petitioners. The taking by a State of the private property of one person or corporation, without the owner's consent, for the private use of another, is not due process of law, and is a violation of the Fourteenth Article of Amendment of the Constitution of the United States. *Wilkinson* v. *Leland,* 2. Pet. 627, 658 ; *Murray* v. *Hoboken Co.,* 18 How. 272, 276 ; *Loan Association* v. *Topeka,* 20 Wall. 655 ; *Davidson* v. *New Orleans,* 96 U. S. 97, 102 ; *Cole* v. *La Grange,* 113 U. S. 1 ; *Fallbrook District* v. *Bradley, ante,* 112, 158, 161 ; *State* v. *Chicago, Milwaukee & St. Paul Railway,* 36 Minnesota, 402.

*Judgment reversed, and case remanded to the Supreme Court of the State of Nebraska, for further proceedings not inconsistent with this opinion.*