Hart, J.
The ultimate question is whether the order of the Public Utilities Commission, which requires Chillicothe, as soon as required facilities are available, to join with two other telephone companies in furnishing full-period private-line telephone service connecting Commercial’s offices in Chillicothe and Portsmouth with Commercial’s existing private-line telephone service among Columbus, Newark, Lancaster and Zanesville, is unreasonable or unlawful.
The answer to this question requires the determination of the following three elemental questions: (1) Is *403 the furnishing of full-period private-line telephone service to a person or corporation having a legitimate business need therefor a public utility service?; (2) does the existence of a public necessity for private-line telephone service require telephone compames, having proper location and adequate facilities, to furnish a continuous line of communication for the purpose of providing such service?; and (3) under the facts and circumstances of this case, as shown by the record, may Chillicothe be required to co-operate in furnishing private-line telephone service to Commercial?
Chillicothe claims that the furnishing of full-period private-line telephone service is not a public utility service; that an order to furnish such service constitutes a taking of its property in violation of Section 19, Article I of the Ohio Constitution; and that the commission’s order is not responsive to a public need.
The authority under which the commission acts in regulation of public utility service is predicated upon a finding that public necessity requires the regulation demanded. See Section 614-63, General Code (Section 4905.50, Eevised Code). Such a question was determined at an early date when the question came before this court as to whether the commission could, where certain conditions exist, require two or more telephone companies to establish and maintain, through telephone lines within the state between two or more localities. See Shafor v. Public Utilities Commission, 94 Ohio St., 230, 236, 113 N. E., 809, L. R. A. 1917E, 1080.
The crucial question is whether such type of telephone service constitutes a public utility service so as to give the commission jurisdiction over subject matter such as that in its order in the instant case. It is clear that the Public Utilities Commission within the limits of its constitutional power may not require *404 a public utility, against its will, to turn over to private persons for their private use and benefit the exclusive control and use of a portion of the utility private property. Missouri Pacific Ry. Co. v. Nebraska, 164 U. S., 403, 41 L. Ed., 498, 17 S. Ct., 130. But the record in the instant case discloses that there is a public demand for this type of service and that various persons are using it. Public carriers of freight and the shipping public are especially served in the expediting and tracing of shipments. Such service is also demanded by radio broadcasting companies which use private-line channels for several hours at a time in broadcasting their programs, especially their sports programs. The record discloses that at the present time Chillicothe participates with Bell in furnishing three private-line channels for radio program transmission channels to the Shawnee Broadcasting Company Radio Station WBEX in Chillicothe, Ohio. In this connection, it should be stated that Chillicothe claims that these are furnished because of the requirements of the Federal Communications Commission to whose supervision it is subject.
The Ohio statutes do not define the term, “telephone service,” but the term, “telephone company,” is defined.
Section 614-2ti, General Code (Section 4905.02, Revised Code), defines the term, “public utility,” as including, with certain exceptions not herein involved, every corporation, including all telephone companies, defined in Section 614-2, General Code (Section 4905.03, Revised Code).
Section 614-2, General Code (Section 4905.03, Revised Code), provides in part:
“The following words and phrases used in this chapter unless the same is inconsistent with the text, shall be construed as follows:
C t * * *
*405 “Any person or persons, firm or firms, copartnership or voluntary association, joint stock association, company or corporation, wherever organized or incorporated ;
í Í * * *
“When engaged in the business of transmitting to, from, through or in this state, telephonic messages, is a telephone company, and as such is declared to be a common carrier.”
In this connection the Attorney General, in his brief herein, appropriately says:
“Both private line telephone service and message toll telephone service are telephone services; and both afford private telephone services in that they both enable parties to carry on a private call. The only difference in this respect is that in message toll telephone service the parties have a private line during the period of the call, during which period nobody else may use that line, while in private line telephone service the parties have a private line 24 hours a day. If the furnishing of private line telephone service is a taking of the appellant’s private property for private use, the appellant’s property is likewise taken every time it connects its lines with the residence or place of business of a person as the means of affording him telephone service.”
We find no reported cases wherein is discussed or decided the exact question of whether private-line telephone service, if furnished to all persons similarly situated and requesting it, is a public utility service. However, in a proceeding before the Interstate Commerce Commission, relating to a complaint concerning contracts for private-line telegraph and telephone service, that commission, in 50 I. C. C. Reports, 731, 756, 757, said:
‘ ‘ Some question is raised regarding our jurisdiction on the ground that respondents are subject to the act *406 (I. C. C.) only in so far as they are engaged in ‘the transmission of messages,’ and that in rendering the private-wire service they merely lease facilities, the messages being transmitted by the lessees. With this refinement we can not agree. It is true that by providing his own operators the private-wire lessee receives a service that differs in some respects from that rendered to the general public. The fallacy of the argument is, however, clearly shown when it is remembered that the service rendered to the private-wire lessee corresponds very closely with that furnished by telephone companies to their subscribers. We do not understand that the jurisdictional point is seriously urged. It seems clear that respondents are common carriers engaged in the transmission of intelligence.”
This type of service is growing in volume. Bell has furnished private-line telephone service for several years. It now has contracts with 87 telephone companies in Ohio to furnish this type of service. In our opinion, it would be unreasonable to hold that these contracts are void and that the Public Utilities Commission has no jurisdiction to recognize or supervise them. It is a relatively new type of service but that does not prevent it from being in fact a public utility service. In this connection, it is stated, as follows, in 73 Corpus Juris Secundum, 992, Section 2:
“The public or private character of the enterprise does not depend, however, on the number of persons by whom it is used, but on whether or not it is open to the use and service of all members of the public who may require it, to the extent of its capacity; and the fact that only a limited number of persons may have occasion to use it does not make of it a private undertaking if the public generally has a right to such use. It has been stated that the true criterion by which to determine whether a plant or system is a public utility is whether or not the public may enjoy it of *407 right or by permission only. It is the duty which the purveyor or pioducer of the service or commodity has undertaken to perform in behalf of the public generally, or .of any defined portion of it, which stamps it as a public utility, and not the use which the consumer makes of the service or commodity furnished.”
This court concludes that, although both message toll telephone service and private-line telephone service are services to private parties, both services constitute public utility service.
The court finds from the record in the instant case also that there does exist a public necessity and demand for private-line telephone service as described in the application of Commercial; and that the commission had jurisdiction to make the order in question and was justified in directing Chillicothe to provide such service as soon as the necessary facilities are available for that purpose.
The order of the Public Utilities Commission is affirmed.

Order affirmed.

Weygandt, C. J., Matthias, Zimmerman, Bell and Taet, JJ., concur.