

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-22-2008

# CBS Outdoor Inc v. NJ Transit Corp

Precedential or Non-Precedential: Precedential

Docket No. 07-3966

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"CBS Outdoor Inc v. NJ Transit Corp" (2008). *2008 Decisions.* Paper 5.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/5

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-3966

———

CAROLE MEDIA LLC,
a New Jersey Limited Liability Company

v.

NEW JERSEY TRANSIT CORPORATION;
ALL VISION LLC;
STUART BROOKS, in his official capacity as Director
of Outdoor Advertising for the
New Jersey Department of Transportation

(D.C. No. 06-cv-02428)

CAROLE MEDIA, LLC,
a New Jersey Limited Liability Company

v.

NEW JERSEY TRANSIT CORPORATION;
ALL VISION LLC

(D.C. No. 06-cv-04529)

CAROLE MEDIA, LLC,
                                                        Appellant

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 06-cv-02428 and 06-cv-04529)
District Judge: Hon. Harold A. Ackerman

———

Argued September 11, 2008

Before: SLOVITER, FUENTES and ALDISERT, <u>Circuit Judges</u>

(Filed: December 22, 2008)

———

Gage Andretta     (Argued)
Wolff & Samson
West Orange, New Jersey 07052

    Attorney for Appellant, Carole Media LLC

Anne Milgram
Attorney General of New Jersey

Of Counsel:
Andrea M. Silkowitz
Assistant Attorney General

On the Brief:
Kenneth M. Worton (Argued)
Melanie E. Brown
Deputy Attorneys General
Office of Attorney General of New Jersey
Department of Law & Public Safety
Newark, New Jersey 07105

    Attorneys for Appellee, New Jersey Transit Corp.

On the Brief:
Ronald L. Glick     (Argued)
Julie E. Ravis
Stevens & Lee
Princeton, New Jersey 08540

    Attorneys for Appellee, All Vision LLC

SLOVITER, Circuit Judge.

In 2004, after a scandal involving the licensing of billboards on New Jersey property, New Jersey took steps to revamp its billboard program. Thereafter, two of the companies that had licenses to display those billboards filed suit against the New Jersey Transit Corporation ("NJ Transit"), the lessor, and All Vision LLC ("All Vision"), its managing agent. The suit was initiated by CBS Outdoor Inc., which held licenses for 240 billboards. This suit was dismissed by the District Court. CBS Outdoor Inc. filed a brief appealing the District Court's order dismissing its claim but subsequently advised this court that it had settled with defendants. The remaining plaintiff, Carol Media LLC, whose suit was also dismissed, and who has licenses for 3 billboards, did not file a brief on appeal but advised this court it would rely on portions of CBS' brief. It has not settled, and thus its appeal from the District Court's dismissal of its claim that NJ Transit violated the Takings Clause is before us. See CBS Outdoor, Inc. v. New Jersey Transit Corp., No. 06-2428, 2007 WL 2509633 (D.N.J. Aug. 30, 2007).

The premise of Carole Media's appeal is that the defendants took without a valid public purpose certain of Carole Media's property rights arising from its operation of billboards on NJ Transit's land.

## I.

### A. Background

NJ Transit is a public corporation organized by the State of New Jersey in order to establish and provide public transportation services. See N.J. Stat. Ann. §§ 27:25-1–27:25-24. NJ Transit is statutorily authorized to lease its property, N.J. Stat. Ann. § 27:25-5(o), including specifically to "lease or otherwise contract for advertising in or on the equipment or facilities of the corporation," N.J. Stat. Ann. § 27:25-5(s). Accordingly, NJ Transit (through a managing agent) has long

3

issued "licenses" to private parties that allow such parties to use NJ Transit land for the erection and maintenance of billboards and other forms of outdoor advertisement.

Carole Media obtained two licenses in 2001 (to operate one billboard in Wayne, New Jersey and another in Bridgewater) and a third license in 2002 (again in Wayne). Although the licenses expressly provide for a renewable term of one year and termination upon thirty-days notice, Carole Media alleges, as summarized by the District Court, that the "general industry practice is for railroads not to terminate a license with an outdoor advertising company that is performing its obligations under the license, unless the railroad needs to use the land for development . . . or is going to sell the land." CBS Outdoor, 2007 WL 2509633, at *1. Further, Carole Media alleges that, in reliance upon this industry practice, it has invested in excess of $1 million in the licensing, permitting, and development of its three billboard sites on NJ Transit property. Indeed, Carole Media contends that, prior to the new billboard program, its property rights in these billboards were valued in excess of $4 million.

Carole Media identifies several property interests allegedly protected by the Takings Clause arising out of its operation of billboards on NJ Transit land. First, Carole Media contends that the licenses issued by NJ Transit constitute property. Second, pursuant to the New Jersey Roadside Sign Control and Outdoor Advertising Act ("Outdoor Advertising Act"), N.J. Stat. Ann. §§ 27:5-5–27:5-28, billboard operators must obtain a license and permit from the New Jersey Department of Transportation ("NJ DOT") in order to erect, use or maintain any sign for outdoor advertising. N.J. Stat. Ann. § 27:5-8. Carole Media contends that the NJ DOT permits it obtained for its billboards on NJ Transit land also constitute property. Further, Carole Media contends that its "rights to operate billboards in [Wayne and Bridgewater] today constitute very valuable property rights" because recent amendments to the Outdoor Advertising Act not applicable at the time of its permit applications provide that NJ DOT cannot issue a permit without the applicant first obtaining local approval, and these

4

municipalities would not approve new billboards in those locations. Complaint at ¶ 41. Finally, Carole Media alleges that it possesses property rights in the physical billboard structures themselves.

The series of events leading to NJ Transit's alleged taking of the above property rights began with a 2003 scandal that Carole Media refers to as "Billboardgate." Billboardgate involved allegations that two top aides to the governor of New Jersey "used political clout to arrange for permits to build billboards in locations that would be highly lucrative, even though some of the locations were governed by ordinances prohibiting all outdoor advertising." CBS Outdoor, 2007 WL 2509633, at *3. In response, then-Governor James McGreevey created the Billboard Policy and Procedure Task Force ("Task Force"), which reviewed New Jersey's existing policies for the sale, lease, development, construction and siting of billboards. The Task Force ultimately made numerous recommendations, including a proposal that state entities adopt competitive bidding for the lease of all billboard sites on public property.

Shortly after the Task Force issued its recommendations, NJ Transit solicited bids by those seeking to act as NJ Transit's billboard managing agent. The District Court stated that the five-year contract was eventually awarded to All Vision in 2004 because the company, in light of its proposed "Monetization Program" discussed below, was the bidder most responsive to NJ Transit's desire to "maximize income, foster innovative strategies, and execute the Task Force recommendations." CBS Outdoor, 2007 WL 2509633, at *6.

Subsequently, the New Jersey legislature amended the Outdoor Advertising Act and related statutes in response to the Task Force's recommendations (the "2004 Amendments"). The 2004 Amendments provide that "a State entity . . . shall not enter into any contract or agreement for the sale, lease or license of real property owned or controlled by it . . . with any person . . . for the purpose of displaying any advertisement . . . without publicly advertising for bids." N.J. Stat. Ann. § 52:31-1.1a. However, the 2004 Amendments allowed state entities to renew

5

existing licenses without public bidding for up to five years. Id.

In addition to requiring public bidding for billboard sites on state-owned land, the 2004 Amendments also imposed new requirements on the NJ DOT permitting process. Specifically, NJ DOT may not issue a permit for a new billboard "unless a public hearing has been held . . . and, where the permit applicant is a private entity, all relevant approvals required by the municipality [in which the billboard will be located] have been received by the private entity seeking the permit." N.J. Stat. Ann. § 27:5-8(b). Finally, the 2004 Amendments imposed a cap on the aggregate square footage of outdoor advertising permissible on various state entities' property, including NJ Transit. N.J. Stat. Ann. § 27:5-27.

Consistent with the 2004 Amendments, NJ Transit renewed Carole Media's existing licenses in 2004 and 2005. In September 2005, however, NJ Transit and All Vision began to implement what the District Court referred to as the "Monetization Program" (or the "Program"). Under this Program, NJ Transit (through All Vision) intended to terminate all existing licenses and competitively bid twenty to twenty-two year license agreements at all of its billboard locations. Further, the Monetization Program sought "to 'monetize' the licenses and accelerate receipt by All Vision and NJ Transit of a large portion of the license price by requiring a substantial 'up-front' payment . . . equal to a percentage of all future revenues that [the] bidder expects to earn over the twenty-year life of the license," in addition to yearly rent payments subject to a minimum guarantee. CBS Outdoor, 2007 WL 2509633, at *5.

Carole Media alleges that NJ Transit and All Vision "requested that Carole Media transfer all of its rights to its three billboards and permits" to NJ Transit in order to facilitate the Monetization Program. Complaint at ¶ 54. Carole Media further alleges that "New Jersey Transit and All Vision have threatened to destroy Carole Media's property rights by forcing it to remove its billboards within 30 days unless it accedes to their demand that Carole Media transfer its permits, license and billboards to New Jersey Transit in exchange for a paltry payment that is far

6

less than the fair market value." Id.

Although All Vision informed Carole Media in March 2006 that all three of the latter's NJ Transit licenses would be terminated as of August 31, 2006, these licenses have remained in effect on a month-to-month basis.

## B.     Procedural History

Carole Media filed this suit in September 2006, asserting claims pursuant to 42 U.S.C. § 1983 based on the Takings and Due Process Clauses of the Fifth and Fourteenth Amendments,[1] as well as claims based on various state law tort and breach of contract theories. It sought declaratory and injunctive relief enjoining All Vision and NJ Transit from terminating its licenses or, in the alternative, just compensation for the alleged taking.

As most relevant to this appeal, Carole Media alleged that NJ Transit's implementation of the Monetization Program constituted a taking of Carole Media's property interests in its billboards without a valid public purpose. According to Carole Media, the Monetization Program as implemented "merely replac[es] one long-term relationship with an incumbent billboard operator with another long-term relationship with a new incumbent . . . solely to benefit a private party, All Vision" through the payment of disproportionate management fees on the large, up-front payments bidders will be required to make under the Program. Complaint at ¶ 66. Thus, Carole Media contends that the taking is for a private, rather than public, purpose. Moreover, Carole Media alleges that the Program cannot be justified under the 2004 Amendment's public bidding requirements because the Program contradicts the purpose of the

---

[1] Carole Media also alleged that the taking was invalid under the New Jersey Constitution. See N.J. Const. art. I ¶ 20 ("Private property shall not be taken for public use without just compensation."). That provision is "coextensive" with the Fifth Amendment's Takings Clause. Pheasant Bridge Corp. v. Twp. of Warren, 777 A.2d 334, 343 (N.J. 2001).

7

Amendments, which sought "to impose greater regulatory control over the licensing of billboards on public land, precisely in order to prevent state agencies from entering into special arrangements with specific parties that enable those parties to capture a disproportionate value from those billboards." Complaint at ¶ 58.

After Carole Media's case was consolidated with that of the original plaintiff, CBS Outdoor Inc., the District Court granted defendants' motion to dismiss the complaints pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. As most relevant here, the District Court dismissed the plaintiffs' takings claims as unripe under Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985). In the course of reaching this conclusion, the District Court also rejected Carole Media's claim that the alleged taking lacked a public purpose. Before we reach the latter issue, we must first determine whether the Supreme Court's decision in Williamson County requires a plaintiff to seek just compensation through state law procedures before a federal court may hear a claim alleging that a taking lacks a valid public purpose. This court has not previously addressed this issue.[2]

## II.

### Discussion

#### A. Ripeness

In Williamson County, the plaintiff, a land developer who

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction over the District Court's final judgment pursuant to 28 U.S.C. § 1291. The District Court also dismissed under Rule 12(b)(6) the plaintiffs' claims alleging a violation of Substantive Due Process, as well as CBS Outdoor Inc.'s Contract Clause claim. Finally, the Court refused to exercise supplemental jurisdiction over Carole Media's state law claims. Carole Media does not appeal these rulings.

8

had purchased a large tract, brought suit in federal court pursuant to 42 U.S.C. § 1983 against the county planning commission and its members, alleging that the application of various new zoning laws to the plaintiff's property amounted to a taking of that property without just compensation. 473 U.S. at 175. The jury awarded substantial damages and the claim eventually reached the Supreme Court. The Court assumed without deciding that the plaintiff stated a claim under the Just Compensation Clause, but held that such a claim was not ripe for adjudication in the federal courts because the plaintiff had "not yet obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property, nor utilized the procedures [the state] provides for obtaining just compensation." Id. at 186.

First, the Supreme Court explained that the question whether a "taking" has occurred "simply cannot be evaluated until the [relevant state actor] has arrived at a final, definitive position" on the issue. Id. at 191. Noting that the plaintiff had failed to seek any variances from the zoning regulations to which it objected, the Court stated that "until the [relevant state actor] determines that no variances will be granted, it is impossible for the jury to find, on this record, whether [the plaintiff] 'will be unable to derive economic benefit' from the land." Id. The Court distinguished the line of cases requiring exhaustion of state administrative remedies, noting that the issue presented in the case before it was that the government entity charged with implementing the regulation had not reached a final decision on how the regulations would be applied to plaintiff's property. Id. at 192-93. Second, the Court noted that the Just Compensation Clause "does not proscribe the taking of property; it proscribes taking without just compensation." Id. at 194. Thus, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Id. at 195.

Neither of these bases for Williamson County's holding apply to Carole Media's Public Use Clause claim. Carole Media's claim is based on the Supreme Court's "repeated[]

9

state[ment] that 'one person's property may not be taken for the benefit of another private person without a justifying public purpose, even though compensation be paid.'" Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 241 (1984) (quoting Thompson v. Consol. Gas Corp., 300 U.S. 55, 80 (1937)). Thus, unlike the Just Compensation Clause claim at issue in Williamson County, a Public Use Clause claim is ripe before the plaintiff seeks just compensation through state procedures because such "proceedings do not supply the appropriate remedy." Montgomery v. Carter County, 226 F.3d 758, 767 (6th Cir. 2000). A plaintiff that proves that a government entity has taken its property for a private, not a public, use is entitled to an injunction against the unconstitutional taking, not simply compensation. Moreover, "forcing the plaintiff to pursue state 'remedial' procedures would be an exhaustion requirement, a requirement that Williamson County explicitly does not impose." Id. (citing Williamson County, 473 U.S. at 193-94). Finally, there is no doubt that Carole Media has received a final decision from NJ Transit in light of the latter's termination of Carole Media's licenses.

We thus conclude that Williamson County's rejection of that plaintiff's claim for lack of ripeness does not apply to Carole Media's Public Use Clause claim. The clear majority of our sister Courts of Appeals to address the issue have reached the same conclusion. See Rumber v. District of Columbia, 487 F.3d 941, 944 (D.C. Cir. 2007) ("[T]he ripeness requirements of Williamson County do not apply to public use claims under the Fifth Amendment."); Montgomery, 226 F.3d at 766-67 (same); McKenzie v. City of White Hall, 112 F.3d 313, 317 (8th Cir. 1997) (same); Armendariz v. Penman, 75 F.3d 1311, 1320-21 & n.5 (9th Cir. 1996) (en banc) (same); Samaad v. City of Dallas, 940 F.2d 925, 936-37 (5th Cir. 1991) (same). But see Forseth v. Village of Sussex, 199 F.3d 363, 373 (7th Cir. 2000) (holding that claim that taking was for private purpose was not ripe because plaintiffs "failed to utilize their state law remedies" such as an appeal of the relevant state actors' decisions).

The District Court recognized this substantial authority that Williamson County does not apply to claims under the

Public Use Clause. Nonetheless, the District Court held that Carole Media's claim was not ripe because Carole Media failed to alleged sufficient facts that, if true, would demonstrate a violation of that Clause. However, the issue of whether Carole Media's Public Use Clause claim was ripe is distinct from the issue of whether Carole Media alleged sufficient facts on the merits to survive a motion to dismiss under Rule 12(b)(6).[3] Cf. County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 168 n.1 (3d Cir. 2006) (holding that Just Compensation Clause claim at issue was ripe under Williamson County but "express[ing] no view on the merits of [the] Just Compensation Takings claim"). Because we agree with the majority of Courts of Appeals that have held that Williamson County does not apply to claims under the Public Use Clause, we conclude that the District Court erred by dismissing Carole Media's Public Use Clause claim as unripe.

## B.    Public Purpose

Although the District Court ultimately held that Carole Media's takings claims were unripe, it also concluded that the alleged taking was supported by valid public purposes, specifically NJ Transit's implementation of the 2004

---

[3] Similarly, it is possible to read the District Court's opinion as holding that, if a plaintiff successfully alleges a Public Use Clause claim, then all of that plaintiff's takings claims (including claims for just compensation) are ripe regardless of whether Williamson County's requirements are satisfied. However, where a plaintiff alleges both a violation of the Public Use Clause and, in the alternative, a claim for just compensation, that plaintiff may bring only the Public Use Clause claim without first satisfying Williamson County. See Montgomery, 226 F.3d at 767 ("We conclude that to the extent that [plaintiff] claims that its property was taken for a private use, the claim is ripe and [plaintiff] may sue immediately without resorting to state remedies; but that to the extent that [plaintiff] claims that the taking was a taking for a public use without just compensation, the claim is not ripe until the requirements of Williamson County are met.").

Amendment's public bidding requirements and its effort to maximize income through innovative approaches to billboard management. Carole Media contends that this conclusion was erroneous because, in its view, a state entity's desire to increase revenue cannot constitute a valid public purpose and in any case, the alleged taking was actually intended solely to benefit a private party, All Vision.[4]

There can be no dispute that NJ Transit "would no doubt be forbidden from taking [Carole Media's property] for the purpose of conferring a private benefit on a particular private party." Kelo v. City of New London, 545 U.S. 469, 477 (2005). See also Midkiff, 467 U.S. at 245 ("A purely private taking could not withstand the scrutiny of the public use requirement; it would serve no legitimate purpose of government and would thus be void."); Missouri Pac. Ry. Co. v. Nebraska, 164 U.S. 403, 417 (1896) (invalidating state administrative order requiring railroad to provide land to private parties for erection of private grain elevator because order constituted impermissible private taking). Similarly, the Supreme Court has indicated that the state may not "take property under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit." Kelo, 545 U.S. at 478.

However, the Supreme Court has also made it clear that the Public Use Clause is satisfied when a taking is made for a "public purpose," a concept that the Court has defined "broadly, reflecting [the Court's] longstanding policy of deference to legislative judgments in this field." Kelo, 545 U.S. at 480. Thus, "the 'public use' requirement is . . . coterminous with the scope of a sovereign's police powers," Midkiff, 467 U.S. at 240, and therefore is satisfied "where the exercise of the eminent

---

[4] As noted above, Carole Media's action was consolidated in the District Court with that of another party (CBS Outdoor Inc.). On their consolidated appeal, Carole Media adopted CBS Outdoor's briefs and appendix notwithstanding that the factual and legal bases of Carole Media and CBS Outdoor's claims on appeal differed to some extent.

12

domain power is rationally related to a conceivable public purpose." Id. at 241. Indeed, the Court has cautioned that a federal court should "not substitute its judgment for a legislature's judgment as to what constitutes a public use 'unless the use be palpably without reasonable foundation.'" Id. (quoting United States v. Gettysburg Elec. Ry. Co., 160 U.S. 668, 680 (1896)); see also Berman v. Parker, 348 U.S. 26, 32 (1954) ("The role of the judiciary in determining whether [the takings] power is being exercised for a public purpose is an extremely narrow one.").

Finally, the Supreme Court has also held that the fact that a taking creates incidental benefits for individual private parties "does not condemn that taking as having only a private purpose." Midkiff, 467 U.S. at 243-44; see also Kelo, 545 U.S. at 485 ("[T]he government's pursuit of a public purpose will often benefit individual private parties."); Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594, 612-13 (3d Cir. 1991) ("[P]roperty [that] is taken by eminent domain and is transferred to a private party can still fall within the gambit of public use. This is so even when the motive for taking is to give to a private party.") (citing Midkiff, 467 U.S. at 243-44).

Examples from the Supreme Court's cases demonstrate the breadth of permissible public purposes under the Public Use Clause. The Court has indicated that economic revitalization constitutes a public purpose for a taking, even if the revitalization program involves transfers of property to private parties. Kelo, 545 U.S. at 489-90; Berman, 348 U.S. at 33-34. Similarly, the state and federal governments may validly transfer property from one private party to another in order to correct market failures. Midkiff, 467 U.S. at 243; Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1014-15 (1984). The Court has also held that the government may take property from a party that fails to maintain it and transfer the property to another private party, where the recipient will provide appropriate upkeep of the property and thereby allow the government to use it. Nat'l R.R. Passenger Corp. v. Boston & Maine Corp., 503 U.S. 407, 422-23 (1992).

In light of these teachings, we cannot hold that NJ Transit's alleged taking is invalid for lack of a valid public use. Indeed, as the Supreme Court held in <u>Berman</u>, property, "which, standing by itself, is innocuous and unoffending," may be taken to further the legislature's purpose, looking at the issue as a whole. <u>Berman</u>, 348 U.S. at 35. As an initial matter, Carole Media focuses unduly on the District Court's language that one of NJ Transit's public purposes was to maximize revenue. The District Court did not hold that the Public Use Clause was satisfied solely by NJ Transit's desire to increase revenue–nor need it have done so in light of the other public purposes underlying NJ Transit's conduct.

First, in the 2004 Amendments, the New Jersey legislature ordered NJ Transit (along with every other state entity) to conduct public bidding for its billboard sites in response to alleged corruption by state officials. N.J. Stat. Ann. § 52:31-1.1a. The state's desire to clean up political corruption in this industry surely constitutes a valid public purpose.[5] Further, NJ Transit and All Vision designed the Monetization Program to implement these public bidding requirements. NJ Transit instructed bidders for the contract to manage its billboard properties to assume that the Task Force's recommendations (which included public bidding) would become law. All Vision's proposal included long-term competitive bidding.

Carole Media alleges that the Monetization Plan as implemented violates the "purpose" of the 2004 Amendments because All Vision, which is under contract as NJ Transit's managing agent only until 2009, will "capture a disproportionate value" from the up-front payments on the twenty-year billboard

---

[5] Even the dissent in <u>Kelo</u> noted that the Public Use Clause is satisfied where the "precondemnation use of the targeted property inflicted affirmative harm on society." 545 U.S. at 500 (O'Connor, J., dissenting). Here, the New Jersey legislature, in response to Billboardgate, required public bidding for permits to operate billboard on public land in order to prevent harmful political corruption.

14

licenses. Complaint at ¶ 58. However, Carole Media does not allege that NJ Transit or All Vision have violated or will violate any specific provision of the 2004 Amendments or other law. Indeed, Carole Media concedes that "[t]here is no requirement in the Amendments that the public bidding process award contracts for any set period." Id.

Additionally, the District Court held, and we agree, that NJ Transit's desire to "maximize income and employ innovative approaches to its billboard management" constitutes a valid public purpose. CBS Outdoor, 2007 WL 2509633, at *14. Again, the 2004 Amendments required NJ Transit to terminate its existing licenses and publicly bid its billboard locations. In light of that statutory mandate, it was not inappropriate for NJ Transit to seek to increase its billboard revenues through a new licensing structure–especially because the New Jersey legislature authorized NJ Transit to lease its property as it saw fit in order to fulfill its statutory purposes. N.J. Stat. Ann. § 27:25-5(o). Indeed, the Supreme Court has made it clear that "the means of executing the project [resulting in a taking] are for [the legislature] alone to determine, once the public purpose has been established." Berman, 348 U.S. at 33.

Finally, the fact that All Vision will receive incidental benefits as a result of the taking (i.e., management fees for its role in bidding out the new, long-term licenses) does not undermine the aforementioned public purposes. See Kelo, 545 U.S. at 485-86; Midkiff, 467 U.S. at 243-44; Hughes, 945 F.2d at 612-13. We recognize that the Supreme Court has suggested that a taking may be invalid under the Public Use Clause where an avowed public purpose is actually a "mere pretext" to an "actual purpose . . . to bestow a private benefit." Kelo, 545 U.S. at 478; see also id. at 490 (Kennedy, J., concurring) ("[T]ransfers intended to confer benefits on particular, favored private entities, and with only incidental or pretextual public benefits, are forbidden by the Public Use Clause.").

However, aside from making a conclusory allegation that NJ Transit engaged in the alleged taking "solely to benefit a private party, All Vision," Complaint at ¶ 66, Carole Media has

15

not made "a plausible accusation of impermissible favoritism." Kelo, 545 U.S. at 491 (Kennedy, J., concurring); see also Goldstein v. Pataki, 516 F.3d 50, 63 (2d Cir. 2008) ("[W]e hold today that where, as here, a [taking] is justified in reference to several classic public uses whose objective basis is not in doubt, we must continue to adhere to the Midkiff standard" and reject any claim that the purported public uses are mere pretexts for an impermissible private purpose.). Further, Carole Media does not allege that All Vision will receive its rights to operate billboards on NJ Transit's land, but rather that the taking will lead to All Vision's receipt of management fees. Indeed, this case cannot be the textbook private taking involving a naked transfer of property from private party A to B solely for B's private use and benefit because there is no allegation that NJ Transit, at the time it terminated Carole Media's existing licenses, knew the identity of the successful bidder for the long-term licenses at those locations. Cf. Kelo, 545 U.S. at 493 (Kennedy, J., concurring) (noting, as evidence of validity of taking, that the "identities of most of the private beneficiaries were unknown at the time that the city formulated its plans"). To the extent that Carole Media merely argues that All Vision will receive an excessive payment for its role as management agent for NJ Transit, that argument simply fails to demonstrate that NJ Transit's alleged taking was not "rationally related to a conceivable public purpose." Midkiff, 467 U.S. at 241.

In sum, we agree with the District Court that the alleged taking comports with the Public Use Clause. Carole Media has failed to plead facts that, if true, would demonstrate that NJ Transit's avowed public purposes were "palpably without reasonable foundation," Midkiff, 467 U.S. at 230, or that NJ Transit's actual, sole purpose was to confer a private benefit on All Vision.

### III.

For the above-stated reasons, we will affirm the judgment of the District Court dismissing Carole Media's complaint.