**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1755**

CLAYLAND FARM ENTERPRISES, LLC,

        Plaintiff – Appellant,

        v.

TALBOT COUNTY, MARYLAND; TALBOT COUNTY PLANNING & ZONING
COMMISSION; TALBOT COUNTY DEPARTMENT OF PUBLIC WORKS
ADVISORY BOARD; THOMAS HUGHES, in his individual and
official capacity; MICHAEL SULLIVAN, in his individual and
official capacity; JOHN WOLFE, in his individual and
official capacity; JACK FISCHER, in his individual and
official capacity; MARYLAND DEPARTMENT OF PLANNING,

        Defendants – Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.    J. Frederick Motz, Senior District
Judge.  (1:14-cv-03412-JFM)

Argued: September 23, 2016        Decided: December 2, 2016

Before TRAXLER, SHEDD, and FLOYD, Circuit Judges.

Reversed by unpublished opinion.  Judge Shedd wrote the opinion,
in which Judge Traxler joined.  Judge Floyd wrote an opinion
concurring in part and dissenting in part.

**ARGUED:** Mark Frederick Gabler, RICH AND HENDERSON, P.C.,
Annapolis, Maryland, for Appellant.  Paul J. Cucuzzella, OFFICE
OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland;
Victoria M. Shearer, KARPINSKI, COLARESI & KARP, P.A.,

Baltimore, Maryland, for Appellees.  **ON BRIEF:**  Warren K. Rich, Aminah Famili, RICH AND HENDERSON, P.C., Annapolis, Maryland, for Appellant.  Brian E. Frosh, Attorney General of Maryland, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee Maryland Department of Planning.

———————————

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Clayland Farm Enterprises, LLC appeals the district court's order dismissing its claims against Talbot County, Maryland, and other defendants for lack of ripeness. Because Clayland Farm's claims are ripe, we reverse.

I.

Clayland Farm is a 106 acre property located in Talbot County, Maryland. At all relevant times, Clayland Farm has been zoned as a "Village Center," which is generally the "preferred location" in rural areas for "single and multi-family residential development." J.A. 15–16.[1]

The owners of Clayland Farm cannot pursue their land use goals, however, because of three Talbot County ordinances, two that are moratoriums on development, and one that limits sewer availability. Bill Nos. 1214 and 1257, enacted in 2012 and 2014, have indefinitely prohibited certain types of development in areas zoned as Village Centers, including Clayland Farm. The moratoriums prohibit owners from seeking or obtaining approval to subdivide their property. They also impose more restrictive zoning density rules by prohibiting subdivision of properties

---

[1] Because we are reviewing a motion to dismiss, we describe the facts as alleged in Clayland Farm's complaint. See Aziz v. Alcolac, Inc., 658 F.3d 388, 390 (4th Cir. 2011).

zoned as "Village Centers" into more than two lots. The affected property owners, including Clayland Farm, have no ability to seek a variance from, or a waiver to, the moratoriums and are otherwise unable to challenge them outside of court.

The third challenged ordinance established a classification method that determines the availability, if any, and type of sewer system for a property. The Talbot County Council adopted Bill No. 1229 in 2012, pursuant to the Maryland Sustainable Growth and Agricultural Preservation Act of 2012 that required each county to map existing property and designate it in one of seven "tiers." A property's tier designation determines the property's allowed type of subdivision and allowed wastewater treatment system. J.A. 26. Talbot County placed all but six acres of Clayland Farm in Tier IV, which is property intended for natural resources protection and without sewer access. The County took this action even though Clayland Farm had sewer access prior to this new designation and despite the advice of the Maryland Department of Planning,[2] which informed Talbot County in a private letter that Clayland Farm had been

---

[2] The Maryland Department of Planning is a state agency that serves as "an advisory, consultative, and coordinating agency" on a variety of issues related to land use and planning. See Md. Code Ann., State Fin. & Proc. § § 5-201, 5-302.

4

improperly designated as a Tier IV area. Talbot County did not take any action in response to the department's advice.[3]

In response to these ordinances, Clayland Farm filed suit in state court against Talbot County, various county officials, and the Maryland Department of Planning. Clayland Farm's complaint asserted seven claims, arising under state and federal law. Counts I-III assert federal claims against Talbot County for violations of Clayland Farm's Fifth and Fourteenth Amendment rights under the United States Constitution, pursuant to 42 U.S.C. § 1983. Count I asserts a regulatory takings claim that the moratorium is facially unconstitutional. Count II alleges that Talbot County deprived Clayland Farm of their procedural due process rights by enacting the moratoriums with no post-deprivation remedies, and Count III alleges that Talbot County deprived Clayland Farm of its substantive due process rights by enacting the ordinances.

Count IV asserts a § 1983 conspiracy claim against Talbot County and its officials for violating Clayland Farm's Fifth and Fourteenth Amendment rights. Counts V and VI assert state declaratory judgment claims against various defendants, and

_____

[3] Had the Maryland Department of Planning sent a formal, rather than informal, letter, Talbot County would have been required to hold a public hearing on this issue.

Count VII seeks injunctive relief against various defendants to enjoin the violations alleged in the other counts.

Talbot County removed the case and then moved to dismiss. The district court granted the motion "on the ground that the issues raised by [Clayland Farm] are not yet ripe for adjudication. It is beyond the province and competence of this court to make zoning decisions . . . . The record does not suggest that the Talbot County Council has yet denied any of [Clayland Farm's] constitutional rights." J.A. 72. Clayland Farm timely appealed.

## II.

We review de novo the district court's grant of a motion to dismiss, Lebron v. Rumsfeld, 670 F.3d 540, 547 (4th Cir. 2012), accepting the facts as alleged in Clayland Farm's complaint. See Aziz, 658 F.3d at 390. For the following reasons, we reverse the district court's dismissal of Clayland Farm's complaint because all of these claims are ripe.

Ripeness is a justiciability doctrine intended to prevent the courts from entangling themselves in premature disputes. See, e.g., National Park Hospitality Ass'n v. Department of Interior, 538 U.S. 803, 807–08 (2003). "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Id. (internal quotations and citations omitted). A claim should

6

be dismissed for lack of ripeness if the plaintiff has not yet suffered injury and any future impact "remains wholly speculative." Gasner v. Bd. of Supervisors, 103 F.3d 351, 361 (4th Cir. 1996). In determining ripeness, "[a] case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." Miller v. Brown, 462 F.3d 312, 319 (4th Cir. 2006) (internal citation omitted). We now address Clayland Farm's claims under this standard.

Count I is a facial challenge to the moratoriums and is thus clearly ripe. See Complaint at 27, J.A. 34 ("Talbot County has deprived and continues to deprive [Clayland Farm] of its Fourteenth Amendment rights by enacting and perpetuating the Village Growth Moratorium, an illegal, illegitimate and inequitable regulatory taking.") (emphasis added); see also Appellant's Br. at 22–28.[4] When an ordinance on its face is alleged to have effected a taking, as in Count I, the claim accrues when the ordinance interferes in a clear, concrete fashion with the property's primary use. National Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1163 (4th Cir. 1991).

---

[4] Clayland Farm also made this point clear at oral argument. Oral Argument at 3:45, Clayland Farm Enterprises, LLC v. Talbot County, Maryland *et al.* (No. 15-1755), *available at* http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments ("These are facial challenges.").

7

Facial takings challenges to a regulation are "generally ripe the moment the challenged regulation or ordinance is passed . . . ." Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 736, n. 10 (1997).[5]

Clayland Farm suffered concrete and certain injury as soon as the moratoriums were enacted; the ordinances prohibit Clayland Farm from subdividing more than one additional lot from its property and from developing more than one dwelling unit on the lot, which had previously been allowed. The possibility that Talbot County may enact future zoning or planning ordinances that affect Clayland Farm's ability to develop its property does not call into question the finality of the three ordinances that currently restrict Clayland Farm. Thus, Count I's facial challenge is ripe.[6]

---

[5] Speaking to Count I, Talbot County admitted that "[t]o the extent it's a facial challenge, the district court would have jurisdiction to address it because it's ripe." Oral Argument at 20:52, Clayland Farm Enterprises, LLC v. Talbot County, Maryland et al. ( No. 15-1755), available at http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments (emphasis added).

[6] Talbot County argues that Clayland Farm's just compensation claim is not ripe because Clayland Farm did not pursue the state remedy of inverse condemnation. However, the state-litigation requirement for takings claims "does not apply to facial challenges to the validity of a state regulation." See Holliday Amusement Co. v. South Carolina, 493 F.3d 404, 407 (4th Cir. 2007). As to any as-applied just compensation claim for an otherwise valid regulatory taking, Clayland Farm has satisfied the state-litigation requirement by filing this action in state court; Maryland does not have a separate statutory or (Continued)

8

For Count II, Clayland Farm asserts a procedural due process claim, asserting that the enactment of an indefinite moratorium without any post-deprivation remedies facially "violates the Fourteenth Amendment of the U.S. Constitution." J.A. 37. Because Clayland Farm claims a concrete injury and has been provided no means to address that injury, Count II is ripe. See Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner); see also Doe v. Virginia Dep't of State Police, 713 F.3d 745, 758–59 (4th Cir. 2013). Count III asserts that the moratorium and the designation of the Clayland Farm property as Tier IV property were so arbitrary that they facially violate the Constitutional guarantee of substantive due process. See, e.g., Beacon Hill Farm Assoc. v. Loudoun County Bd. of Sup'rs, 875 F.2d 1081, 1084–85 (4th Cir. 1989) (substantive due process requires that

_____

administrative inverse condemnation remedy to challenge an alleged regulatory taking of property. See, e.g., Duke Street Ltd. P'ship v. Board of Cnty. Comm'rs of Calvert Cnty., 684 A.2d 40, 49 (Md. Ct. Spec. App. 1996). Thus, any claimed noncompliance with the state-litigation requirement would be excused because it was the County's removal of the case that prevented the state court from addressing Clayland Farm's 'inverse condemnation' type claim contained in this case. See Sansotta v. Town of Nags Head, 724 F.3d 533, 544 (4th Cir. 2013).

9

regulation cannot be clearly arbitrary and without substantial relationship to general welfare). Count III is therefore ripe.

Count IV, which alleges a conspiracy to commit the constitutional violations in Counts I-III, is ripe for the same reason the events supporting those counts are ripe. While it may not be necessary that the object of the alleged conspiracy has been achieved for the claim to be ripe, the claim certainly is ripe when the object of such conspiracy, here, the enactment of the ordinances, has been accomplished.

Finally, Counts V, VI, and VII are ripe because they allege state law violations or seek injunctive relief based on the enactment of the three ordinances. While the district court found the claims were not ripe because Talbot County had "not yet reached any final decision," J.A. 72, Clayland Farm suffered concrete injury when the three ordinances were enacted, even if the ordinances may later be modified.

### III.

We therefore reverse the district court's dismissal of Clayland Farm's claims for lack of ripeness and remand for further proceedings.

REVERSED

10

FLOYD, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's conclusion that Counts III through VII of Clayland Farm's complaint are all ripe--as is Count I to the extent that it contests the validity of Talbot County's alleged taking. Nonetheless, because Clayland Farm failed to exhaust available state remedies, I would hold that Counts I and II are unripe to the extent that they seek a just compensation remedy. I respectfully dissent from the majority's contrary conclusion as to these counts.

I.

A.

The Fifth Amendment prohibits takings without just compensation and takings for non-public use.[1] I read Count I as presenting both a claim contesting the validity of an allegedly non-public use taking and, in the alternative, a claim for just compensation. See J.A. 34-35 (seeking to enjoin the contested regulations on the theory that they "bear [no] substantial relationship to any legitimate police power," but also seeking compensatory damages for an alleged taking done "without just compensation").

---

[1] The Fifth Amendment of the U.S. Constitution provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

11

With respect to federal just compensation claims, the Supreme Court has instructed that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 195 (1985). This exhaustion requirement makes sense. "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation," id. at 194, and so an adequate state remedy for a public use taking eliminates the possibility of a Fifth Amendment violation.

Recognizing this point, we have held that when a state "opens its courts to inverse condemnation claims arising from regulatory takings," and a plaintiff fails to seek just compensation through such procedures, the plaintiff "has not satisfied [the exhaustion] requirement." Holliday Amusement Co. of Charleston, Inc. v. South Carolina, 493 F.3d 404, 407 (4th Cir. 2007) (discussing Williamson Cty., 473 U.S. at 195). Maryland has, without question, opened its courts for state inverse condemnation claims. See, e.g., Litz v. Md. Dep't of Env't, 131 A.3d 923, 930-31 (Md. 2016). Nonetheless, Clayland Farm failed to advance such a claim in its complaint. As such, Count I's federal just compensation claim is clearly unripe.

12

The majority holds otherwise, based on a misreading of precedent. It does so by first announcing that "Count I is a facial challenge." Maj. Op. at 7. Then, in response to Talbot County's exhaustion argument against Clayland Farm's just compensation claim, the majority cites Holliday Amusement for the proposition that "the state-litigation requirement for takings claims 'does not apply to facial challenges to the validity of a state regulation.'" Id. at 8 n.6 (quoting Holliday Amusement, 493 F.3d at 407). This statement, although true, is irrelevant. It offers no suggestion whatsoever that a facial claim seeking just compensation for a valid taking--as opposed to a facial claim challenging the validity of a taking-- is excused from the exhaustion requirement.

Thus, in my view, even if Count I states a facial just compensation claim, its facial nature would not exempt it from the exhaustion requirement. This view finds extensive support in the case law, both within and outside this Circuit. See, e.g., Wilkins v. Daniels, 744 F.3d 409, 417–18 (6th Cir. 2014) ("With respect to just-compensation challenges, while Williamson County's first requirement may not apply to facial challenges, its second requirement--that plaintiffs must seek just compensation through state procedures--does." (citations omitted)); Alto Eldorado P'ship v. Cty. of Santa Fe, 634 F.3d

13

1170, 1176-77 (10th Cir. 2011) ("Courts considering claims alleging a . . . taking without just compensation, even when characterized as facial claims, have applied the second Williamson County requirement [of exhaustion.]" (citing Equity Lifestyle Props., Inc. v. Cty. of San Luis Obispo, 548 F.3d 1184, 1190 & n.13 (9th Cir. 2008); Holliday Amusement, 493 F.3d at 407; Cty. Concrete Corp. v. Twp. of Roxbury, 442 F.3d 159, 168 (3d Cir. 2006))).

Indeed, there is good reason to treat facial claims challenging the validity of a taking and facial claims for just compensation differently in the exhaustion context. It is sensible to exempt the former category from any exhaustion requirement, because "no amount of compensation would render the taking constitutional [when] it was in excess of the government's authority to take private property." Alto Eldorado, 634 F.3d at 1176 n.3. In contrast, this justification does not apply to the latter category, because a state remedy can obviate the need for a facial, federal just compensation claim in the same way that it can obviate the need for an as-applied one. Thus, it is entirely proper to require Clayland Farm to exhaust its state remedies before allowing it to proceed with its federal just compensation claim--regardless of whether the claim is labeled facial or as-applied.

C.

The majority attempts to further side-step the exhaustion requirement by asserting that if it does apply, Talbot County has waived its right to invoke it by removing this case to federal court. According to the majority, Clayland Farm did what it needed to do by filing its complaint in state court. Therefore, "any claimed noncompliance with the state-litigation requirement would be excused because it was the County's removal of the case that prevented the state court from addressing Clayland Farm's 'inverse condemnation' type claim contained in this case." Maj. Op. at 8 n.6 (citing Sansotta v. Town of Nags Head, 724 F.3d 533, 544 (4th Cir. 2013)).

With respect to my colleagues in the majority, the waiver principle that we recognized in Sansotta is inapplicable here. In Sansotta, we waived the exhaustion requirement following the removal of a suit that alleged both a state inverse condemnation claim and a federal just compensation claim. 724 F.3d at 544-47. We reasoned that because the filing of such joint suits in state court was "exactly what San Remo Hotel[, L.P. v. City & Cty. of San Francisco, Cal., 545 U.S. 323 (2005)] permits," we would be "judicially condon[ing] manipulation of litigation" if we subjected such suits to the exhaustion requirement post-removal. Sansotta, 724 F.3d at 544-45.

15

The complaint in this case, however, falls outside the scope of Sansotta's waiver reasoning. It alleges no state inverse condemnation claim, and is thus not the type of joint suit authorized by San Remo Hotel. Whereas the plaintiff in Sansotta alleged a state inverse condemnation claim that could have obviated the need for a court (federal or state) to reach its federal just compensation claim, Clayland Farm failed to do so. Thus, Clayland Farm's federal just compensation claim is just as unripe in federal court as it was in state court, and so Clayland Farm should not be entitled to a waiver defense.

D.

Although I conclude that the just compensation claim of Count I is unripe, I agree with the majority that the alternative claim in Count I--a public use claim contesting the alleged taking's facial validity--is ripe. See Holliday Amusement, 493 F.3d at 407 ("[T]he state procedures requirement does not apply to facial challenges to the validity of a state regulation." (citations omitted)).

As explained above, there is no need to attach an exhaustion requirement to a claim that a taking was not for public use, because no amount of state compensation can cure the illegality of such a taking. With this understanding in mind, at least three circuits have classified a public use claim as ripe even while classifying an adjoined just compensation claim

16

as unripe for failure to exhaust.  See Carole Media LLC v. N.J. Transit Corp., 550 F.3d 302, 308 n.3 (3d Cir. 2008); Rumber v. District of Columbia, 487 F.3d 941, 943–45 (D.C. Cir. 2007); Montgomery v. Carter Cty., Tenn., 226 F.3d 758, 768 (6th Cir. 2000).  I would follow these courts' approach here.[2]

## II.

Next, I would dispose of Clayland Farm's two due process claims in a manner similar to my recommended disposition of Count I.

## A.

To elaborate, the substantive due process claim in Count III is analogous to the public use claim in Count I, in that both contest the validity of Talbot County's regulations. Therefore, the former is exempt from the exhaustion requirement to the same extent that the latter is.  See Kurtz v. Verizon N.Y., Inc., 758 F.3d 506, 514 (2d Cir. 2014) ("Substantive due process claims of arbitrary and capricious conduct, however, require only a showing of finality--there is no exhaustion requirement." (citations omitted)).  As such, I agree with the

_____

[2] Although the typical remedy for a non-public use taking is an injunction, Kelo v. City of New London, 545 U.S. 469, 475-76 (2005), I would also approve compensatory relief designed to remedy any past injuries resulting from such a taking.  See Theodorou v. Measel, 53 F. App'x 640, 642 (3d Cir. 2002) (affirming award of compensatory damages for property damage and emotional distress flowing from a township's completed private taking).

17

majority that Count III is ripe, notwithstanding Clayland Farm's failure to exhaust its state remedies.

B.

In contrast, I would hold that the procedural due process claim in Count II is unripe.

Indeed, I am "persuaded by those courts holding that Williamson County"--including its exhaustion requirement-- "applies to due process claims arising from the same nucleus of facts as a takings claim." Kurtz, 758 F.3d at 515–16 (citing, inter alia, B. Willis, C.P.A., Inc. v. BNSF Ry. Corp., 531 F.3d 1282, 1299 n.19 (10th Cir. 2008); Greenfield Mills, Inc. v. Macklin, 361 F.3d 934, 961 (7th Cir. 2004)). "Such a rule finds support in Williamson County itself: if the only process guaranteed to one whose property is taken is a post-deprivation remedy, a federal court cannot determine whether the state's process is constitutionally deficient until the owner has pursued the available state remedy." Id. at 516 (citation omitted). Additionally, this rule prevents plaintiffs from "circumvent[ing] the ripeness requirement for takings claims simply by attaching a procedural due process claim to their complaint." Bigelow v. Mich. Dep't of Nat. Res., 970 F.2d 154, 160 (6th Cir. 1992).

In this case, the procedural due process claim in Count II mirrors the just compensation claim in Count I, in that both

18

seek identical compensation for Clayland Farm's deprivation of development rights. Thus, applying the rule discussed above, I would hold that the exhaustion requirement governing the just compensation claim in Count I should likewise govern the procedural due process claim in Count II. Therefore, Clayland Farm's non-compliance with the exhaustion requirement renders Count II unripe.

### III.

Despite my disagreement with the majority on the above-described points, I am happy to concur in their holding that Counts V and VI--Clayland Farm's state law claims--are ripe.

I also agree that Count IV's conspiracy claim and Count VII's injunctive relief claim are ripe, albeit only to the extent that they are premised on remedying legal violations that underlie claims that are themselves ripe.

### IV.

The majority today remands to the district court just compensation and procedural due process claims premised on alleged government takings for which Maryland has had no opportunity to offer redress. In doing so, the majority leaves the district court with the unenviable task of entertaining claims premised on incomplete government action. See Williamson Cty., 473 U.S. at 195 (explaining, in the just compensation context, that "the State's action is not 'complete' in the sense

19

of causing a constitutional injury 'unless or until the State fails to provide an adequate postdeprivation remedy for the property loss'" (quoting Hudson v. Palmer, 468 U.S. 517, 532 n.12 (1984))).  Because I cannot agree that such claims are ripe, I respectfully dissent from the majority's disposition of Clayland Farm's just compensation and procedural due process claims.