THOMAS P. FROME v. ANDREW J. DENNIS.

1. The defendant borrowed the plaintiff's plow from one who had possession of it, but had no right to lend or use it, and after using it a few days returned it to the possessor; the defendant all the time supposing that it belonged to the possessor. *Held*, that the defendant was not guilty of conversion.

2. After the defendant had so returned the plow the plaintiff demanded it of him. *Held*, that his failure to comply with this demand, compliance being then impossible, was not evidence of a conversion.

3. To constitute a conversion of goods, there must be some repudiation of the owner's right, or some exercise of dominion over them inconsistent with such right, or some act done which has the effect of destroying or changing the quality of the chattel.

4. When the acts of persons are evidence in a case, their cotemporaneous declarations which give character to those acts, are also evidence, as part of the *res gestæ*.

---

On *certiorari* to the Warren Pleas.

Argued at June Term, 1883, before Justices DIXON and PARKER.

For the plaintiff, *L. Dewitt Taylor*.

For the defendant, *George A. Angle.*

The opinion of the court was delivered by

DIXON, J.   In August, 1879, the plaintiff left his plow on the farm of one Cummins, with the latter's consent, until he, the plaintiff, should come and take it away.   In April, 1880, the farm passed into the possession of one Hibler, the plow still being there.   In June, 1880, the defendant, a neighboring farmer, borrowed the plow of Hibler to plow a field, supposing the plow to be Hibler's, and having used it, in three or four days returned it to Hibler, still supposing it to be his property.   In the summer of 1881 the plaintiff informed the defendant that it was his plow which he had used, and demanded of him pay for the use and the return of the plow or its value, and the defendant not complying, the plaintiff brought an action of trover for the plow.   The justice before whom the suit was instituted, and the Common Pleas on appeal, each gave judgment for the plaintiff for the value of the plow.   The judgment of the Pleas is now before us on *certiorari*, and the defendant below contends that the foregoing facts proved on the trial did not justify the judgment.

In this contention we agree with the defendant.

In order to maintain an action of trover, it is necessary to prove a conversion by the defendant of the plaintiff's property.   What will constitute a conversion is, I think, well summed up by Mr. Justice Depue in *Woodside* v. *Adams*, 11 *Vroom* 417, in these words: "To constitute a conversion of goods, there must be some repudiation by the defendant of the owner's right, or some exercise of dominion over them by him inconsistent with such right, or some act done which has the effect of destroying or changing the quality of the chattel."

This subject has quite recently received considerable discussion in the Exchequer Chamber and House of Lords of England, in *Fowler* v. *Hollins*, *L. R.*, 7 *Q. B.* 616, and *L. R.*, 7 *H. L.* 757.   The facts upon which the court finally settled

as the basis of decision, made the case a plain one of conversion. They were, that one Bayley had fraudulently come into possession of thirteen bales of cotton belonging to the plaintiff, and had sold and delivered them to the defendant, who bought in good faith, and who then sold and delivered them in good faith to Micholls & Co. Here was clearly an exercise of dominion over the goods by the defendant inconsistent with the plaintiff's right. But in the course of the cause some of the judges thought that, according to the case reserved, the defendant, in the transfer from Bayley to Micholls & Co., dealt only as broker and agent of the latter, and in examining the goods, receiving them from Bayley and forwarding them to Micholls & Co., acted without any actual intention with regard to, or any consideration of, the property in the goods being in one person more than another; and so the question was raised, whether such a possession of the goods and such an asportation amounted, in law, to a conversion. Many of the English cases were commented on at length by Mr. Justice Brett, in both tribunals,' and he insisted, with great force and clearness, upon a negative response. Byles, J., and Kelly, C. B., expressly concurred in this opinion, and the other judges in the Exchequer Chamber seem not to have disagreed with it in point of law, but they rested their conclusion upon a different view of the facts. In the House of Lords, Mr. Justice Blackburn expressed his opinion that the defendant was liable, because he both entered into a contract with Bayley, and also assisted in changing the custody of the goods, and so knowingly and intentionally assisted in transferring the dominion and property in the goods to Micholls & Co. that they might dispose of them as their own. This he deemed a conversion by the defendant, no matter whether he acted as broker or not. In the course of his remarks he lays down the principle that one who deals with goods at the request of the person who has the actual custody of them, in the *bona fide* belief that the custodier is the true owner, or has the authority of the true owner, should be excused from what he does, if the act is of such a nature as would be excused if done

by the authority of the person in possession, if he was a finder of the goods or entrusted with their custody. He concedes, moreover, that this is not the extreme limit of the excuse, and doubts whether it would be a conversion for a miller to grind grain into flour and return the flour to the person who brought the grain, before he heard of the true owner. Under the definition of Mr. Justice Depue, above quoted, this act of the miller would be a conversion, because it changed the quality of the owner's goods. Mr. Baron Cleasby, while concurring with those who looked upon the defendant as a principal, and therefore guilty, says with reference to this view, that he was a broker merely : " How far the intermeddling with the goods themselves by delivering them would " involve a broker in responsibility to the owner, "admits of question, and was the subject of much argument at the bar, and might depend upon the extent to which the broker in such case could be regarded as having an independent possession of the goods and delivering them for the purpose of passing the property." Mr. Justice Grove advised the house in favor of the plaintiff, on the ground that the defendant intermeddled with goods which were not his own, and exercised a dominion over them inconsistent with the right of the true owner. Mr. Baron Amphlett concurred with Brett; Lord Chelmsford, Chancellor Cairns, Lords Hatherley and O'Hagan advised for the plaintiff in substance, because the defendant had exercised dominion over the plaintiff's property by disposing of it to Micholls & Co.

It is apparent, I think, from a perusal of these judgments, that every judge based his opinion of the defendant's guilt on the question whether he had done any act which amounted to a repudiation of the plaintiff's title, or to an exercise of dominion, i. e., ownership over the goods. Less than this would constitute a trespass, but not a conversion, so long as the character of the chattels remained unchanged.

In a very late case in Massachusetts, *Spooner* v. *Manchester*, 133 *Mass.* 270, a similar view is expressed. Field, J., there says : " Conversion is based upon the idea of an assumption

of property or a right of dominion over the thing converted, * * * and it is, therefore, not every wrongful intermeddling with, or wrongful asportation, or wrongful detention of personal property, that amounts to a conversion. Acts which themselves imply an assertion of title or of a right of dominion over personal property, such as a sale, letting or destruction of it, amount to a conversion, even although the defendant may have honestly mistaken his rights; but acts which do not, in themselves, imply an assertion of title or of a right of, dominion over such property, will not sustain an action of trover, unless done with the intention to deprive the owner of it permanently or temporarily, or unless there has been a demand for the property and a neglect or refusal to deliver it, which are evidence of a conversion, because they are evidence that the defendant, in withholding it, claims the right to withhold it, which is a claim of a right of dominion over it. * * * Whether an act involving the temporary use, control or detention of property, implies an assertion of a right of dominion over it, may well depend upon the circumstances of the case and the intention of the person dealing with the property."

To the same effect is *Laverty* v. *Snethen*, 68 *N. Y.* 522.

In the light of these authorities, the conduct of the defendant in the case at bar did not amount to a conversion of the plow. He received it for a temporary use only, and without any claim of right or dominion over it, but having a mere license from the possessor, revocable at once by either the possessor or the true owner. He surrendered it to the possessor from whom he had received it, without any intention of enlarging or changing his title, without any reference to anybody's title, and doubtless would have as readily surrendered to the plaintiff upon his ownership being shown. Neither in the use nor in the surrender by the defendant does there appear any repudiation of the owner's right, or any exercise of dominion inconsistent with such right. His acts may have constituted a trespass, but not a conversion.

This being so, his subsequent failure to deliver the plow to

the plaintiff on demand, was not evidence of a conversion, for the reason that delivery was then impossible to him.    He did not *refuse* to deliver, but could not.    *Ross* v. *Johnson*, 5 *Burr.* 2825; *Salt Springs Bank* v. *Wheeler*, 48 *N. Y.* 492; *Magnin* v. *Dinsmore*, 70 *N. Y.* 410.

The plaintiff contends that the evidence on the part of the defendant as to his conversation with Hibler at the time of borrowing the plow, was illegal.    It was not, however.    It being proper to show that the defendant came into possession of the plow, the declarations of himself and of the person from whom he received possession, cotemporaneous with the transfer and indicative of its character, were admissible as part of the *res gestæ.*    *Luse* v. *Jones*, 10 *Vroom* 707; *Hunter* v. *State*, 11 *Vroom* 495.

The judgment below should be reversed.