The defendants, Phily, Scialla and White, were officers of Artex Dyeing Finishing Co., a corporation which is now insolvent. Plaintiff charges that the defendants converted to their own use or to the use of Artex, funds of the plaintiff amounting to $12,520.03 and he seeks a judgment against them in that amount. Originally plaintiff sought to have a trust impressed upon the assets of Supertex Dyeing Finishing Co., in the sum of $12,520.03. This latter claim was abandoned at the pretrial conference and the complaint was dismissed as to the Supertex Company.
From the testimony it appears that the plaintiff was engaged in the business of lending money upon the security of accounts receivable. From time to time Hirsch lent money to Artex Dyeing 
Finishing Co. For each loan Artex would give to Hirsch its promissory note in the amount of the advance. Artex would also give to plaintiff purported assignments of accounts receivable as collateral security for the repayment of the loans. The amount advanced was usually about sixty per cent. of the total amount of the accounts listed. These so-called assignments were not made simultaneously with the advances. Frequently a week intervened *Page 449 
between the advance and the submission of a list of accounts to Hirsch. And, upon occasion, loans were made before the customers were billed. At no time were the debtors notified of Hirsch's interest in the accounts. Collections were made by Artex and were deposited in the general bank account of Artex. Artex checks would be given to Hirsch in payment of notes. Cotter, Hirsch's agent, testified that it was his custom to call at the Artex plant at two-week intervals. A report of collections made since his last visit would be shown to him and a company check for the amount shown on the report would be given to him. Cotter also stated that customer's checks were held until he called, and deposited after he examined them and gave his consent to the deposit. The defendants did not take the stand, so Cotter's testimony was uncontradicted. But it is inconceivable to me that persons engaged in a business as hazardous as that concerned with the processing of textiles would risk withholding from collection for two weeks the checks received from customers. And since Hirsch received Artex checks and not those of the customers, it is difficult to understand the reason for such an arrangement.
On July 19, 1948, when Cotter called, he was given two checks of Artex, one for $5,893.02 and another for $5,286.95. Cotter said that White asked him to withhold from deposit for several days the check for $5,286.95. When the check was deposited it was returned because there were insufficient funds in the Artex account to meet it. The check was later made good by White. But Mr. Cotter did not explain why he was content to receive a check which was plainly not good at the time if, as he testified, the customers' checks were on hand when he took it. When the two checks were handed to Cotter, White told him that the checks represented all the collections which had been made. It developed later that this statement was untrue. Other sums had been collected and, presumably, were used for general corporate expenses.
From time to time, after July 19th, Cotter made futile attempts to secure further payments. Finally, at a meeting in August, White told Cotter that Artex had ceased business *Page 450 
operations. He assured Cotter that Hirsch would be paid. When payment was not forthcoming, this litigation ensued.
There was no proof that any of the money collected upon the accounts receivable went to any of the defendants. Plaintiff argues, however, that the use of the money collected upon the accounts for any purpose other than payment of the plaintiffs' claim constituted a conversion for which the defendants, as officers and agents of Artex, were liable because of their participation in the conversion. There might be some force to the argument if the accounts had actually been transferred to Hirsch or if there had been a direction to the debtor to pay the accounts to Hirsch. However, such is not the proof in this case. Possession and control of the accounts remained in Artex. That company collected the accounts and, instead of turning over the customers' checks to Hirsch, deposited them in its own account and gave Hirsch its own check for the sum of the accounts collected.
It is apparent that the instruments Hirsch held were not assignments. They were mere promises to pay his claim out of the sums received from the accounts if and when they were collected. The distinction, when dealing with personalty, is between a promise to pay out of a fund after it comes into the hands of the promissor and a direction to the debtor, or present holder of the fund, to pay it or part of it to another person. The first is a mere promise, the latter is an assignment. The retention by Artex of possession and control of the accounts is fatal to plaintiff's claim of an assignment of the accounts receivable. American PinCo. v. Wright, 60 N.J. Eq. 147; affirmed, 85 N.J. Eq. 219.
Under the arrangement between the parties, as disclosed by the evidence, Hirsch was not the owner of the accounts receivable, nor was he entitled to possession of them. It follows, therefore, that when the defendants used the proceeds of the accounts receivable for the general purposes of the corporation they were not guilty of conversion. Frome v. Dennis, 45 N.J.L. 515.
There will be judgment for the defendants. *Page 451