**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3378-16T4

ALL VISION, LLC, as agent
for New Jersey Transit Corp.,
an instrumentality of the State
of New Jersey,

     Plaintiff-Respondent/
     Cross-Appellant,

v.

CAROLE MEDIA, LLC,

     Defendant-Third-Party
     Plaintiff-Appellant/
     Cross-Respondent,

v.

NEW JERSEY TRANSIT
CORPORATION, LOVE
OUTDOOR, LLC n/k/a
SHAMROCK OUTDOOR,
LLC, ROBERT LAMBERT, THE
NEW JERSEY DEPARTMENT
OF TRANSPORTATION,
STUART A. BROOKS and
MICHAEL J. McGUIRE,

     Third-Party Defendants-

Respondents.

_____

Argued April 30, 2019 – Decided August 6, 2019

Before Judges Hoffman, Suter and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0915-09.

Mitchell B. Seidman argued the cause for appellant/cross-respondent Carole Media, LLC (Freedman & Friedland, LLC, attorneys; Mitchell B. Seidman, Steven M. Friedland, and Andrew Pincus, on the briefs).

Ronald L. Glick argued the cause for respondent/cross-appellant All Vision, LLC.

Frank J. Marasco, Deputy Attorney General, argued the cause for respondent New Jersey Transit Corporation (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Frank J. Marasco, on the brief).

Gregory F. Kotchick argued the cause for respondent Love Outdoor, LLC, n/k/a Shamrock Outdoor, LLC (Durkin & Durkin, LLC, attorneys; Gregory F. Kotchick, of counsel and on the brief).

Jennifer R. Jaremback, Deputy Attorney General, argued the cause for respondents The New Jersey Department of Transportation, Stuart A. Brooks, and Michael J. McGuire (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Jennifer R. Jaremback, on the brief).

2

PER CURIAM

In this litigation concerning the ownership and use of certain billboard sites, plaintiff All Vision, LLC (All Vision) sought back rent from defendant Carole Media, LLC (Carole Media), which in turn asserted claims to recover either the billboard structures on those sites or compensation for those structures. Carole Media appeals from the dismissal of its claims, while All Vision cross-appeals only from the dismissal of its claim for damages resulting from an injunction Carole Media secured in federal court. We affirm in part, and reverse and remand in part.

I.

In May 2004, All Vision began serving as the exclusive agent for New Jersey Transit Corporation (NJ Transit) in managing its property for outdoor advertising purposes, including licensing the entities which operate billboards on its property. Prior to All Vision's assumption of that role, Carole Media entered into licenses with NJ Transit to use two of the agency's sites in Wayne and one in Bridgewater. The licenses included the building, maintenance, and operation of billboard structures on each of the sites. The licenses provided for a five- or one-year term renewable in one-year increments and authorized termination on thirty days' notice. Carole Media secured the necessary

3

approvals for erecting the billboards, financed their construction, sold advertising to display on them, and maintained them in working order.

During the term of those licenses, then-Governor James McGreevey established a task force to "review[] New Jersey's existing policies for the sale, lease, development, construction and siting of billboards." Carole Media LLC v. N.J. Transit Corp., 550 F.3d 302, 305 (3d Cir. 2008). The task force recommended "that [S]tate entities adopt competitive bidding for the lease of all billboard sites on public property." Ibid.

After a bidding process, NJ Transit selected All Vision to manage its billboard sites. Ibid. The Legislature, meanwhile, amended the Roadside Sign Control and Outdoor Advertising Act, N.J.S.A. 27:5-5 to -28, requiring State entities to conduct public bidding before licensing its advertising space. N.J.S.A. 52:31-1.1a. Existing licenses could be renewed for up to five years, however. Ibid.

NJ Transit renewed Carole Media's existing licenses twice. Carole Media, 550 F.3d at 305. Each of the final licenses, between Carole Media and All Vision as agent for NJ Transit, were to run for one year, and "thereafter as may be extended" in one-year increments, unless terminated.

4

The licenses specified "[a]ll signboards, structures, equipment and materials erected or used under this license by the Licensee shall remain its personal property," but in the event of termination:

> The Licensee agrees at its own expense to <u>remove all signboards and advertising structures covered by this license within a period of thirty (30) days after the termination of this license</u> or any extension thereof or within whatever shorter period of time may be specified in written notice of cancellation . . . .  If the removal is not so completed by the Licensee, Licensor may at any time thereafter elect . . . to take title on behalf of NJ TRANSIT to said signboards and advertising structures without compensation to the Licensee . . . .

> [(Emphasis added).]

Carole Media claims issues arose in fall 2005 when All Vision, intending to terminate the licenses and conduct public bidding, attempted to pressure Carole Media into transferring its permits for access to the sites from the New Jersey Department of Transportation (NJDOT).  All Vision sent Carole Media a letter on March 17, 2006, advising that it would be terminating all three licenses effective August 31, 2006, and requiring Carole Media to remove its structures within thirty days of that termination, with any extensions granted "at the sole discretion of All Vision and NJ Transit due to the number of structures that need to be removed."  All Vision published a request for bids for these and seventeen other sites in April 2006 and, notwithstanding Carole Media's submission of bids

5

for its three, ultimately awarded all twenty licenses to advertising company Clear Channel. Nonetheless, Carole Media remained on the property and continued to pay rent.

In July 2007, All Vision sent Carole Media a letter outlining safety procedures it needed to follow to remove its billboards. It required Carole Media to complete applications and remit payment for demolition permits from the New Jersey Department of Community Affairs (DCA). NJ Transit would submit the materials on defendant's behalf. All requested documentation would have to be submitted by August 17, 2007. After the deadline passed, All Vision sent Carole Media a final notice requiring removal of the billboards by November 30, 2007. Defendant replied on September 28, 2007, stating it "intend[ed] to fully comply with the deadline."

According to Carole Media, it undertook to deconstruct the billboards on the two Wayne sites in November 2007 but was ordered off the property by All Vision's and NJ Transit's representatives. Carole Media then informed All Vision that its inability to comply with the looming deadline would not constitute its abandonment of its billboards. Carole Media also cancelled contracts with its advertisers for the sites and sought the appropriate permits from DCA for demolition, without success. All Vision ceased sending Carole

Media invoices for rent on the Wayne sites after the deadline passed, but defendant refused to relinquish control of the Bridgewater site and continued to pay rent.

In the meantime, Carole Media pursued a takings claim in federal court based on All Vision's termination of the licenses, and, in December 2007, secured a temporary injunction from the Third Circuit with respect to the removal of any structures from the Wayne and Bridgewater sites. The appeal was dismissed, along with the injunction, in December 2008, but Clear Channel had withdrawn its bids when the injunction prevented All Vision and NJ Transit from delivering the sites.

All Vision sent Carole Media a notice in April 2009, requesting it remove the structures within thirty days, demanding payment of back rent, and asserting All Vision could take title to the structures on NJ Transit's behalf in the event of noncompliance. Carole Media took steps to comply, but did not remove the structures.

All Vision, on behalf of NJ Transit, filed a complaint against Carole Media in May 2009, seeking unpaid rent and lost revenue due to the injunction. Carole Media filed an answer, counterclaim, and third-party complaint against NJ Transit.

Meanwhile, All Vision reopened bidding on the properties in September 2009 and awarded licenses for the Bridgewater and Wayne properties to billboard operator Love Outdoor, now known as Shamrock Outdoor (Shamrock). All Vision sent Carole Media a letter on April 14, 2010, permitting Carole Media a final chance to remove its structures from the sites within thirty days. Carole Media attempted to, but could not remove the structures by the deadline.

In August 2010, NJDOT revoked Carole Media's permits to access the sites. Carole Media protested, triggering proceedings in the Office of Administrative Law (OAL). When Shamrock began accessing the billboards, Carole Media sent a letter to NJ Transit, All Vision, and Shamrock, demanding they cease trespassing on or otherwise using the structures.

With leave of court, Carole Media added Shamrock as a third-party defendant. All Vision and NJ Transit made a joint motion to dismiss, and in July 2011, Judge Yolanda Ciccone issued an order granting that motion in part, dismissing Carole Media's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference.

In January 2012, the Commissioner of NJDOT issued a final administrative decision, concluding the revocation of Carole Media's permits

had been proper, thereby allowing the issuance of new permits for the sites. NJDOT issued NJ Transit permits for all three sites in February 2012.

All Vision, NJ Transit, and Shamrock then filed motions for summary judgment in the matter under review, which the judge granted in part. With leave of court, however, Carole Media filed a fourth amended counterclaim and third-party complaint, which reasserted claims the judge previously dismissed, except to ground them in conduct beginning in February 2012, when the new permits had been issued to NJ Transit. Shamrock filed a motion to dismiss, which the judge granted in full. NJDOT filed for summary judgment, which the judge granted in part.

Prior to the completion of discovery, Carole Media filed a motion for partial summary judgment seeking declaratory relief solely as to the Bridgewater billboard. Meanwhile, NJDOT, All Vision, and NJ Transit all filed for summary judgment against Carole Media in August 2016. Judge Thomas C. Miller issued a set of orders and opinions in October 2016, denying Carole Media's motion and granting All Vision, NJ Transit, and NJDOT summary judgment on all of Carole Media's remaining claims. All Vision's claims were later dismissed.

Carole Media appealed and All Vision cross-appealed.

II.

Carole Media argues the court erred in granting All Vision and NJ Transit summary judgment on Carole Media's claims for inverse condemnation, various torts, and unjust enrichment.

We will affirm the grant of summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Like the trial court, we construe the evidence in the light most favorable to the nonmoving party and accord that party the benefit of all favorable inferences therefrom. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523-24, 535 (1995).

Summary judgment is ordinarily inappropriate prior to the completion of discovery. Velantzas v. Colgate-Palmolive Co., Inc., 109 N.J. 189, 193 (1988). However, the mere availability of further discovery does not preclude granting judgment as a matter of law. Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003). To prevail, the party opposing summary judgment must explain "with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action" and impact

the outcome of the litigation. Ibid. (quoting Auster v. Kinoian, 153 N.J. Super. 52, 56 (App. Div. 1977)). The information sought must be material to an already asserted claim, rather than meant to support the formulation of further causes of action. Camden Cnty. Energy Recovery Assocs. v. N.J. Dep't of Envtl. Prot., 320 N.J. Super. 59, 64 (App. Div. 1999), aff'd o.b., 170 N.J. 246 (2001).

We first address the trial court's grant of summary judgment dismissing Carole Media's claims for inverse condemnation.

Our state and federal constitutions forbid the government from taking private property for public use without just compensation. U.S. Const. amend. V; N.J. Const. art. I, § 20; see also Mansoldo v. State, 187 N.J. 50, 58 (2006) (noting these state and federal constitutional guarantees are coextensive). A taking occurs where the government deprives a property owner of the use or ownership of its property, most directly by authorizing a physical occupation of the property or acquisition of its title. Yee v. Escondido, 503 U.S. 519, 522 (1992). A governmental entity's taking of personal property entitles the owner to just compensation no less than a taking of real property. Warner/Elektra/Atl. Corp. v. Cnty. of DuPage, 991 F.2d 1280, 1285 (7th Cir. 1993). Absent any formal proceeding brought by that entity to effect the taking, a cause of action for inverse condemnation permits a property owner a means of recovery and

arises from the "self-executing character of the constitutional provision with respect to compensation." Raab v. Borough of Avalon, 392 N.J. Super. 499, 509-10 (App. Div. 2007) (quoting United States v. Clarke, 445 U.S. 253, 257 (1980)).

Carole Media alleged All Vision and NJ Transit took its billboard structures for public use without just compensation. But because the parties' rights and obligations were governed by license agreements, and because All Vision was not itself a governmental entity, we must decide whether Carole Media could maintain these claims against All Vision, and also whether the claims could advance, despite the underlying wrongs sounding in breach of contract.

The trial court concluded the contractual relationship precluded Carole Media's claim for inverse condemnation. It found dispositive the decision of the United States Court of Federal Claims in Griffin Broadband Communications, Inc. v. United States, 79 Fed. Cl. 320, 323-24 (2007), which, as discussed below, it interpreted to plainly preclude a takings claim where an issue of breach of contract already existed. Because its claims were intimately related to a breach, the court reasoned Carole Media could not maintain the claims as a matter of law.

The trial court also determined those claims could not be asserted against All Vision, because All Vision, a private entity, could not perform a governmental action. All Vision acted only as an agent for NJ Transit, not on its own behalf, and never asserted ownership over any assets claimed by Carole Media. The court therefore awarded summary judgment to All Vision and NJ Transit on Carole Media's inverse condemnation claim.

Carole Media argues All Vision and NJ Transit took the property it previously purchased, assembled, and maintained, without compensation by abusing a contractual provision granting title to NJ Transit and All Vision if it failed to remove the structures within thirty days following termination of the licenses. Further, Carole Media contends enforcement of the license agreement should not constitute its sole recourse for compensation. Indeed, it asserts an action simply to enforce the license agreements would not suffice to compensate defendant for the full spectrum of its loss.

Carole Media analogizes to the circumstance where a landlord unlawfully holds a tenant's property following a lease, because in that instance, the tenant would have a claim for conversion. See Cohen v. Korol, 9 N.J. Super. 182, 185-86 (App. Div. 1950). Likewise, Carole Media argues it should be able to maintain claims for conversion and inverse condemnation. Defendant views

Griffin, 79 Fed. Cl. at 323-24, as inapplicable, because the property at issue there, the contractual rights themselves, was different from that at issue here, the physical billboard structures. Carole Media further argues that, unlike in Griffin, its claims did not involve obligations arising under the licenses, and so did not actually sound in contract.

Carole Media asserts further that factual issues should have precluded the grant of summary judgment. Lastly, Carole Media contends the court erred in determining an inverse condemnation claim could not be brought against a private entity, asserting the law permits maintenance of an inverse condemnation action against such an entity so long as the property was taken for a public use. See Ardoin v. State, 679 So. 2d 928, 932 (La. App. Ct. 1996).

With respect to All Vision's exposure to liability, the court explicitly considered and correctly rejected the reasoning of Ardoin, 679 So. 2d at 932, on which Carole Media relied. Critically, the claim in that case relied on the Louisiana state constitution, id. at 932, which we are not bound to follow.

Carole Media is correct, however, that the court misinterpreted Griffin, 79 Fed. Cl. at 323-24. There, the Army prematurely terminated a contract with an entity that provided cable television and related services to personnel stationed on or near one of its bases and, in so doing, required that the entity cease

14                                                                          A-3378-16T4

operations and remove its equipment from the base. Id. 322. The entity then made takings claims stemming from the Army's actions relating to the contract and presenting the question as to when contractual rights themselves may be the subject of a taking. Id. 322-23. In the course of deciding that the particular claims at issue were not viable as a matter of law, the Court of Federal Claims explained:

> The Government's alleged failure to fulfill its contract obligations would constitute a breach of contract, but is not itself a taking of property compensable under the Fifth Amendment. See United States v. Winstar Corp., 518 U.S. 839, 868-71, 907-10 (1996); see also id. at 919 (Scalia, J., concurring) ("Virtually every contract operates, not as a guarantee of particular future conduct, but as an assumption of liability in the event of nonperformance: The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it,—and nothing else."). A contract itself does constitute a property interest that potentially can be the subject of a taking. A contract is not considered taken, however, when the Government breaches a contract, but does not deprive a contract holder of the right to seek damages for breach of that contract. Castle v. United States, 301 F. 3d 1328, 1342 (Fed. Cir. 2002). As defendant argues, this situation is not comparable to the one in Lynch v. United States, 292 U.S. 571 (1934), in which Congress had "eliminated altogether a forum for advancing a breach of contract claim." . . . In the instant case, plaintiffs are free to pursue whatever remedy their agreement with the Army allows. No taking lies, however, because the Government has not engaged in any "legislative or administrative actions that abrogated or repudiated any

15

contract obligation or otherwise impaired [plaintiffs'] ability to enforce [their rights] secured under the terms of the contract." Janicki Logging Co. v. United States, 36 Fed. Cl. 338, 346 (1996), aff'd, 124 F.3d 226 (Fed. Cir. 1997).

[Griffin, 79 Fed. Cl. at 324 (citations reformatted).]

Thus, although a contract constitutes a property interest that may be taken, there is no taking so long as recovery could be had for the breach. Ibid. The court here misunderstood that to mean that an inverse condemnation claim could never be viable so long as a related contractual claim was available. The subject of the taking here, at least to the extent of Carole Media's challenge of the trial court's decisions, is the billboard structures, not the licenses themselves, and nothing in Griffin precludes defendant from maintaining an inverse condemnation claim based on the taking of the structures, even though claims for breach of contract may also be available.

Further, the taking Carole Media challenges occurred pursuant to the terms of a license agreement into which it voluntarily entered. The taking occurred without compensation, but the license terms specified that none would be due. It thus does not constitute a constitutional deprivation in itself. The alleged conduct that prevented Carole Media from removing its structures before it had to forfeit them made the taking possible, and so arguably caused it. But

whether that suffices to constitute a constitutional deprivation or just amounts to a breach of the implied covenant of good faith and fair dealing, see Wood v. N.J. Mfrs. Ins. Co., 206 N.J. 562, 577 (2011), is at least questionable.

Regardless, aside from the incorrect ground on which the trial court relied, the moving parties did not assert and the court did not identify any valid ground for granting judgment as a matter of law outright on these claims. We therefore reverse the court's grant of summary judgment, but only as to Carole Media's inverse condemnation claims against NJ Transit and only insofar as Carole Media alleges a taking of the physical billboard structures, as opposed to the licenses or permits.

Carole Media next argues the trial court erred in granting All Vision and NJ Transit summary judgment on its remaining claims for conversion, trespass, and civil conspiracy, because it failed to comply with notice requirements under the Tort Claims Act[1] (TCA), and because the claims were precluded by the economic loss doctrine.

The TCA broadly forbids any action "against a public entity or public employee under th[e] [A]ct unless the claim on which it is based [has] been presented in accordance with the procedure set forth" in the Act. N.J.S.A. 59:8-

---

[1] N.J.S.A. 59:1-1 to 12-3.

3. In particular, such a claim must be "presented by the claimant or by a person acting on his behalf" and must include:

    a. The name and post office address of the claimant;

    b. The post-office address to which the person presenting the claim desires notices to be sent;

    c. The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;

    d. A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;

    e. The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and

    f. The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.

[N.J.S.A. 59:8-4.]

A claimant must provide such notice no later than ninety days after accrual of the cause of action; the claimant will be "forever barred" from recovery for failure to comply. N.J.S.A. 59:8-8.

Nonetheless, we recognize these requirements are not a "trap for the unwary," and have permitted parties to maintain claims so long as "notice has been given in a way, which . . . substantially satisfies the purposes for which notices of claims are required." Lebron v. Sanchez, 407 N.J. Super. 204, 215-16 (App. Div. 2009). Specifically, those purposes are:

> (1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense; (3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and (4) to inform the State in advance as to the indebtedness or liability that it may be expected to meet.
>
> [Beauchamp v. Amedio, 164 N.J. 111, 121-22 (2000) (internal quotation marks and citation omitted).]

Whether a given notice substantially complies with the requirements entails a "fact-sensitive analysis involving the assessment of all of the idiosyncratic details of a case." Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 356 (2001) (quoting Cornblatt v. Barow, 153 N.J. 218, 240 (1998)).

Carole Media relies on a letter its counsel sent to the deputy attorney general representing NJ Transit. The letter, which Carole Media's counsel also sent to all opposing counsel, did not concern notice of a claim, but rather the

"permitted locations for the three . . . [o]utdoor [a]dvertising [p]ermits" at issue. The author asserted Carole Media considered itself the owner of the billboards, and that it had consistently held that position in this litigation, in which the issue of ownership remained in dispute. He then brought up NJDOT's issuance of new permits for the sites, which would give NJ Transit, All Vision, or Shamrock the ability to access and use the billboards. The letter demanded NJ Transit, All Vision, and Shamrock immediately cease use of the billboards. He then requested that, to the extent use continued, those entities have in place appropriate insurance policies for the billboards naming Carole Media as an additional insured. He advised further that nothing in the letter should be deemed an admission that Carole Media did not continue to own the billboards. In closing, he stated:

> All rights, claims, and defenses are reserved, including, but not limited to, those relating to Carole Media's ownership of the Billboards, and Carole Media's ability to seek money damages from your respective clients both to the extent Carole Media is damaged by their failure to obtain the above insurance, and to the extent your respective clients' [u]se of the Billboards inures to their financial or other benefit and/or to Carole Media's financial or other detriment.

In addressing the summary judgment motion, the court acknowledged Carole Media had neither used the correct form required for a tort claim notice

20

nor served its letter directly on NJ Transit itself. But the court rejected that either of these minor defects could undermine the validity of the purported notice, adding it would be "hyper-technical and absurd" to hold otherwise.

Nonetheless, the court found the letter deficient. The letter neither mentioned the TCA nor the words "notice," "claim," "tort," "trespass," "conversion," "civil conspiracy," or any other tort-based cause of action. Indeed, the court explained:

> A fair reading of the letter indicates that it is not a "Notice of Claim" at all, but instead a "lawyer[']s letter" that was part of the "positioning" and "jockeying" of the parties during the course of this litigation. The purposes of the letter appear to be to stake out a position and to make sure that insurance was put in place to protect Carole Media's interests. To now attempt to "long after the fact" attribute other meanings or purpose to the letter is simply a self-serving perversion of the clear language.

The court found particularly curious that the letter, if intended as a tort claim notice, would be "so thoroughly disguised," given a lawyer had written it. In addition, the letter had been sent to other litigants as well, and that counsel's response merely acknowledged its receipt and disagreed with its contents without mentioning the TCA. The court concluded, therefore, that Carole Media had failed to provide adequate notice, and dismissed its claims against both NJ Transit and All Vision.

21

On appeal, Carole Media maintains it substantially complied with the notice requirements. It acknowledges its letter never identified any specific torts, mentioned the Act, or included most of the other key words the court pointed out, but asserts that none of those elements are strictly required by relevant authority. Further, the letter did, contrary to the court's ruling, at least use the word "claim," mention the name of the claimant and the sender's name and address, provide some information as to the circumstances from which the claims arose, and identify NJ Transit as a responsible party. Moreover, Carole Media contends the court failed to appreciate the significance of counsel's near-immediate response, which it argues confirms counsel's understanding of the letter as constituting notice.

Regardless, most of those circumstances weigh against Carole Media. The letter was sent to counsel in the context of already ongoing litigation. Thus, it is not obvious the letter meant to provide any notice of liability for further tort claims redundant to those already pled, particularly in light of the author's failure to explicitly invoke either the statute or any specific cause of action or to at least mention the word "notice."

While the language in the closing paragraph could, in isolation, foreshadow additional claims, context suggests those final sentences served as

a warning that additional damages might flow from the claims already asserted. There was simply no clear notice of tort claims.

We therefore affirm the trial court's determination that the letter failed to satisfy the notice requirements of the TCA and that Carole Media was barred from bringing its claims for conversion, trespass, and civil conspiracy against All Vision and NJ Transit.

Carole Media next argues the court erred in granting plaintiff summary judgment on its claim for unjust enrichment. However, Carole Media does not challenge an order issued three years earlier by Judge Ciccone dismissing a claim for unjust enrichment as part of the third amended complaint.

The claim on appeal involved the same alleged injustice as the claim in its third amended pleading, except confined to the timeframe following NJDOT's issuance of new permits for access to the sites in February 2012. Judge Miller observed the claim presented no new facts and that nothing in the prior decision depended on the timeframe covered by the claim. He recognized the previous decision as the law of the case and saw no basis to "resurrect" this already-dismissed claim.

Carole Media argues on appeal that Judge Miller's reliance on Judge Ciccone's earlier decision was mistaken. Defendant acknowledges the

revocation of its permits and issuance of new ones to NJ Transit did bear on unjust enrichment claim, but not to the extent it disputed ownership of the billboards. The revocation of its permits, it explains, did not "alter the circumstances under which [All Vision and NJ Transit] attempted to manipulate and force [it] to 'abandon' the billboards and thereby unjustly enrich themselves at [its] expense."

But the ability to profit from use of the billboards hinges on the authorization. Once Carole Media's permits were revoked in a decision it did not appeal, it had no right to access to the property and use the billboards for its own profit. Carole Media does not appeal from Judge Ciccone's determination that the prior iteration of its unjust enrichment claim was legally deficient on that ground. We therefore affirm.

Carole Media next contends the trial court erred in denying it partial summary judgment on its claim for declaratory relief, specifically, a declaration that it owned at least the Bridgewater billboard and therefore retained the right to remove it. Because the court not only declined to award defendant partial summary judgment on that claim but wound up dismissing the claim instead, Carole Media's arguments must also be understood to challenge the dismissal.

Although we do not "render advisory opinions or function in the abstract," Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 107 (1971), we may grant declaratory relief to the extent there exists an "actual dispute between parties who have a sufficient stake in the outcome," N.J. Ass'n for Retarded Citizens, Inc. v. N.J. Dep't of Human Servs., 89 N.J. 234, 241 (1982) (NJARC). We may issue declaratory judgment in "controversies which have not yet reached the stage at which the parties seek a coercive remedy." NJARC, 89 N.J. at 242. Declaratory judgment proceedings thereby "serve as an instrument of preventive justice . . . to permit adjudication of rights or status without the necessity of a prior breach." Rego Indus., Inc. v. Am. Modern Metals Corp., 91 N.J. Super. 447, 453 (App. Div. 1966). Other avenues for relief ordinarily leave "no reason to involve [the statute's] provisions," Hammond v. Doan, 127 N.J. Super. 67, 72 (Law Div. 1974).

The judge, citing the admonitions in NJARC, 89 N.J. at 241-42, and Rego Industries, 91 N.J. Super. at 452, held that declaratory relief was not meant for those cases that had already ripened into fully litigated controversies in which coercive remedies were demanded. The judge observed this was plainly such a case, and therefore concluded Carole Media could not obtain declaratory relief

as a matter of law, denied its motion for partial summary judgment, and dismissed its claim.

Defendant argues on appeal the judge misapplied <u>NJARC</u>. In particular, defendant points to the Supreme Court's conclusion that declaratory relief remained warranted notwithstanding that the case had a "moving record" and that "many changes ha[d] occurred" since its inception, <u>NJARC</u>, 89 N.J. at 240, 243, as Carole Media contends was the case here. Carole Media also argues the judge failed to seriously consider the point its counsel made to that effect at oral argument, in favor of releasing a lengthy opinion the judge had already written. Carole Media claims this presents one of several instances of bias that undermined the trial court proceedings. Carole Media asserts the judge effectively awarded NJ Transit declaratory relief by leaving them with title to the billboards without deciding the "critical" issue of when that title passed, thereby depriving all parties of the opportunity to have their rights as to the billboards settled.

First, Carole Media was not entitled to partial summary judgment on this claim. At the very least, whether Carole Media forfeited the billboard structures for failure to remove them remained a factual dispute undermining its claim to ownership of the structures as a matter of law. Moreover, the availability of

other avenues for relief, which Carole Media itself pursued, rendered declaratory relief superfluous and unnecessary and, as a consequence, made its claim for that relief subject to dismissal.

Carole Media misreads NJARC in that regard. The plaintiffs, patients at a residential institution for mentally disabled individuals and an advocacy group, sought declaratory and injunctive relief as to the parameters of the care patients were entitled to pursuant to statute. Id. at 237-38, 240. The Court recognized the institution had undergone many changes in staffing and services since the case had begun, yielding a "moving record" that continued to change, leaving the trial record in part obsolete. Id. at 240. However, the Court concluded declaratory relief was warranted not in spite of the progression or solidification of the dispute, as defendant's arguments presume, but because the parties were concerned only with their legal obligations going forward. Id. at 240-43. Moreover, the plaintiffs no longer sought injunctive relief, because they believed it would be unnecessary once those obligations had been settled. Id. at 242. In contrast, Carole Media pursued various other avenues of relief throughout this litigation and, indeed, seeks to revive several of them through this appeal.

As for Carole Media's complaint that the trial court wrote the bulk or entirety of its opinion ahead of oral argument, the record gives no indication the court outright ignored its point, which, in any event, was incorrect, before finalizing its decision. Lastly, with respect to Carole Media's contention that dismissal of this claim has left the parties' respective rights to the structures unsettled, their rights are settled as a practical matter. NJ Transit claimed control of the billboards pursuant to the text of the license terms, and Carole Media's challenge to the propriety of that action has been made and failed, except for the inverse condemnation claim. Therefore, we affirm the court's decision to dismiss Carole Media's declaratory judgment claim.

Carole Media next argues the court erred in dismissing its claims against Shamrock for conversion, trespass, unjust enrichment, and civil conspiracy based on Shamrock's access to the properties and use of the billboard structures. On Shamrock's motion to dismiss these claims, the court found it clear that NJ Transit had maintained that it owned and had the ability to license the billboards at issue and Carole Media did not have the right to use the structures. The court reasoned that Shamrock's objectively reasonable reliance on NJ Transit's claim of ownership, as well as on the licenses it gained from NJ Transit through a public bidding process and permits from NJDOT, precluded liability for

28

trespass, conversion, or unjust enrichment. Moreover, the claim for civil conspiracy was not viable because Shamrock had won a public bid and complied with all its legal obligations. The court therefore dismissed all these claims.

Carole Media faults the court for concluding Shamrock could reasonably rely on NJ Transit's claim of ownership. It asserts the court was bound to accept the allegations of its counterclaims as true and that the record did not support a finding of justifiable reliance. Shamrock, Carole Media argues, had ample notice that it still claimed ownership of the billboards, most notably via All Vision's letter apologizing for the delay in permitting Shamrock to use the billboards, defendant's cease and desist letter to All Vision, NJ Transit, and Shamrock, and a letter in which Carole Media reiterated its claim of ownership.[2] Moreover, Carole Media contends Shamrock's reliance was irrelevant in a claim for conversion.

While Carole Media is correct that the court did not strictly confine itself to a consideration of its pleading, a court may consider matters outside the pleadings, treat the motion to dismiss as one for summary judgment, and resolve it accordingly. R. 4:6-2. Carole Media disputes the one factual circumstance

---

[2] As previously noted, Carole Media contends this letter also served as a tort claims notice.

external to its pleading that the court found determinative here – Shamrock's objectively reasonable reliance on NJ Transit's claim of ownership – but the evidence Carole Media cites is not to the contrary. All Vision's letter merely explained that the prior user of the sites had not yet had its permits formally revoked, and, except for brief access to the billboards prior to Carole Media's cease and desist letter, there is no indication Shamrock used the sites prior to the revocation of Carole Media's permits and the issuance of new permits to NJ Transit. As the court noted, Shamrock had been duly licensed to operate the sites following a public bidding process. In sum, Carole Media points to nothing placing Shamrock's reasonable reliance on NJ Transit's claim of ownership in legitimate dispute.

However, Carole Media is correct that Shamrock's belief, assuming it was mistaken for purposes of the motion, Printing Mart-Morristown, 116 N.J. at 746, did not preclude Shamrock's liability for conversion. Conversion is the "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Chicago Title Ins. Co. v. Ellis, 409 N.J. Super. 444, 454 (App. Div. 2009) (quoting Restatement (Second) of Torts § 222A(1) (Am. Law Inst. 1965)).

A-3378-16T4

The tort does not require "an intent to harm the rightful owner," or knowledge "that the [property] belongs to another." Id. at 456. In other words, Shamrock's liability for conversion could not be defeated by its reasonable belief that it was using NJ Transit's property with legitimate permission, if the property actually belonged to Carole Media, as defendant claims.

Regardless, "the mere use of the property of another without permission of the owner does not necessarily amount to conversion." LaPlace v. Briere, 404 N.J. Super. 585, 595 (App. Div. 2009). On the contrary, "[t]o constitute a conversion of goods, there must be some repudiation by the defendant of the owner's right, or some exercise of dominion over them by him inconsistent with such right, or some act done which has the effect of destroying or changing the quality of the chattel." Id. at 596 (quoting Frome v. Dennis, 45 N.J.L. 515, 516 (Sup. Ct. 1883)).

Shamrock never claimed ownership of the billboards; NJ Transit has. Shamrock has used them, but only in objectively reasonable reliance on NJ Transit's claim of ownership and pursuant to a license duly obtained from NJ Transit after a public bidding process and a permit from NJDOT. Nor can that use be deemed "inconsistent with" defendant's claimed rights with respect to the property, because, as the court noted, Carole Media no longer had a permit to

access the property when that use occurred. Indeed, the revocation of defendant's permit was upheld administratively, a result on which Shamrock could further reasonably rely. Thus, the court was correct that Carole Media had not made out a viable claim for conversion against Shamrock, even if not for the precise justification it gave. See Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001) (noting that "appeals are taken from orders and judgments and not from opinions . . . or reasons given for the ultimate conclusion").

As for its claims for unjust enrichment, conspiracy, and trespass, Carole Media made no specific argument as to them on appeal, and we will not address such bald assertions on the merits. R. 2:11-3(e)(1)(E).

Carole Media next contends the court erred in dismissing its counterclaims against NJDOT and individual agency employees on grounds of permit and good faith immunity under the TCA. Because we find permit immunity applied, we need not address Carole Media's arguments relating to good faith immunity under N.J.S.A. 59:3-3.

Public entities may not be liable for an injury except to the extent permitted by the TCA. Tice v. Cramer, 133 N.J. 347, 355 (1993). Public employees may likewise claim any immunity afforded by the statute or common law. Fluehr v. City of Cape May, 159 N.J. 532, 539 (1999). The party asserting

the immunity bears the burden of demonstrating it applies.  Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 582 (2009).

Carole Media claimed NJDOT and its employees failed to execute the law in good faith; aided and abetted All Vision, NJ Transit, and Shamrock in various torts; and conspired with the same parties to accomplish the same end.  Carole Media alleged NJDOT and its employees violated its own unwritten policy not to issue a new permit until the prior billboard operator for that site removed the existing structures, expedited the issuance of those permits "outside the ordinary course of business," and knowingly issued the permits to NJ Transit, notwithstanding that Shamrock would be operating the billboards.

NJDOT and its employees asserted immunity provided by the TCA.  The relevant statute provides:

> A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of, or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where he is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked.
>
> [N.J.S.A. 59:3-6.]

The TCA affords the same immunity to public entities in nearly identical language.  N.J.S.A. 59:2-5.  This immunity is "pervasive and applies to all

phases of the licensing function," whether discretionary or ministerial, and extends both to the actual act of issuance of a permit or license and the underlying decision-making process. Malloy v. State, 76 N.J. 515, 520 (1978).

Carole Media maintains that permit immunity should not apply because its claims alleged wrongdoing independent of NJDOT's issuance of the permits. In that regard, Carole Media quarrels with the court's interpretation of Ball v. New Jersey Telephone Co., 207 N.J. Super. 100, 108-11 (App. Div. 1986), arguing that case concerned whether the issuance of the permit created a "tortious 'situation'" in the form of a dangerous condition on the property, and asserting that dangerous condition is analogous to the "situation" here, namely the claimed scheme to deprive defendant of its property.

However, all the claims Carole Media asserted against NJDOT and its employees clearly implicated the permit immunity provision of the TCA. Our decision in Ball is not to the contrary. There, an administrator of a man's estate attempted to recover from the State for the man's death in an automobile accident allegedly attributable to the improper placement of a telephone pole on the wrong side of a guardrail. Id. at 103. The State claimed immunity based on its issuance of a permit for the pole. We concluded the TCA was not meant to

"confer[] absolute tort immunity where a public entity grants a license to create a dangerous condition on it property."  Id. at 108-10.

We further explained that, although we had "consistently applied the [TCA] to protect public entities against tort liability in the exercise of their licensing function," it was

> far different to suggest . . . that the State can clothe itself with immunity by merely issuing a permit authorizing another to create a dangerous condition on its property which it thereafter maintains without remedy.  In such a case, the licensing authority of the State is in no sense implicated.  Stated somewhat differently, the culpable act is not the issuance of a permit.  Rather, it is the creation and maintenance of a dangerous condition upon the property and the "palpably unreasonable" conduct of the public entity in failing to remedy it.

> [Id. at 110-111 (emphasis added).]

The same principle does not apply here.  As the court noted, the facts at issue do not concern a dangerous condition maintained on the properties.  More importantly, NJDOT did not engage in any course of tortious conduct or negligent inaction independent of its issuance of the permits.  The immunity provision of the statute clearly applied here.

Carole Media lastly argues the court erred in denying a motion for leave to amend its pleading.  Once a response has been filed, a party may amend its

pleading only by the adverse party's written consent or by leave of court. R. 4:9-1. Motions for leave should be liberally granted, unless the amendment would cause undue prejudice or be futile. Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 501 (2006). A court's decision on a motion for leave rests within its sound discretion and will be reviewed only for an abuse of that discretion on appeal. Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 457 (1997).

Carole Media made the motion in question in July 2012 after a wave of discovery yielded numerous documents related to public bidding for state-owned billboard sites, which Carole Media believed provided further evidence of corruption in awarding use of those sites. The court had previously dismissed several of Carole Media's claims arising from that same alleged conduct on various legal – rather than factual – grounds. Following an unsuccessful motion for reconsideration, Carole Media moved for leave to amend its pleading to restore the previously dismissed claims and add new parties and claims, including for civil conspiracy, violation of the New Jersey Racketeer Influenced and Corrupt Organizations Act (RICO), N.J.S.A. 2C:41-1 to -6.2, and aiding and abetting both RICO and antitrust violations.

The court observed the new claims were merely the "old claims" that had already been dismissed, "just worded differently." Because the court could not find "anything new," it deemed the proposed amendment futile and denied the motion for leave.

On appeal, Carole Media never directly refutes the court's reasoning. It instead accuses the court of ignoring the voluminous bidding documents it had recently acquired through discovery and, by implication, the merits of its claims. But the claims Carole Media sought to resurrect were dismissed as a legal matter, not a factual one, so additional evidence of the same alleged wrongdoing cannot, in itself, undermine the dismissal. Moreover, Carole Media does not explain why any of the purportedly new claims it asserted were distinct enough from the old ones to escape the same fate, notwithstanding that they alleged the same sorts of corrupt behavior based on the same factual background. Because the amendments would therefore have been futile, the court's denial of Carole Media's motion for leave was well within its discretion.

III.

All Vision cross-appeals from the trial court's dismissal of its claim for damages arising from the injunction Carole Media obtained against it in the federal litigation.

A-3378-16T4

Plaintiff alleged in its complaint that the injunction prevented it from delivering the billboard sites to Clear Channel, forcing it to reopen the sites for bidding, and ultimately yielding a lower bid. Without invoking any specific cause of action, it demanded damages for the reduced revenue. Ahead of an anticipated trial, plaintiff requested a special jury instruction outlining its claim – that Carole Media had undisputedly obtained an injunction that was ultimately discharged, and that both federal and state law authorized relief as a consequence of this "wrongful injunction." (citing Pub. Serv. Comm'n of the State of Missouri v. Brashear, 312 U.S. 621, 629 (1941); Penwag v. Landau, 148 N.J. Super. 493, 501 (App. Div. 1977)).

The court, however, understood the federal precedent on which plaintiff relied to limit the relief from a wrongful injunction to the value of any bond required as security for the injunction. Thus, if no bond was required, as was the case here, there could be no recovery.

All Vision acknowledges the federal precedent on which it relied did limit recovery to the value of the injunction bond, but argues that that precedent applies only to injunctions issued at the district-court level, where the federal rules strictly require security for the injunction, Fed. R. Civ. P. 65(c), rather than

to those issued, as here, at the circuit-court level, where the rules merely permit the issuance of a bond, Fed. R. App. P. 8(a)(2)(E).

However, federal law is uniformly clear that "there can be no recovery for damages sustained by a wrongful issuance of a preliminary injunction in the absence of a bond, unless the defendant sues for malicious prosecution or on a theory of unjust enrichment." Buddy Systems, Inc. v. Exer-Genie, Inc., 545 F.2d 1164, 1167-68 (9th Cir. 1976). The doctrine of unjust enrichment is inapplicable here, and All Vision does not even purport to set forth any claim for malicious prosecution.

All Vision's claim for relief under State law must also fail because it also requires a claim for malicious prosecution. Penwag, 148 N.J. Super. at 501. Again, All Vision made no such claim here.

IV.

We therefore reverse the trial court's grant of summary judgment on Carole Media's claims for inverse condemnation, specifically Counts I and XVI of its fourth amended pleading, but only to the extent those claims were asserted against NJ Transit and only to the extent they alleged a taking of the billboard structures rather than the licenses or permits. We affirm in all other respects, and remand for further proceedings.

Affirmed, in part, and reversed and remanded, in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3378-16T4